634 S.E.2d 668

**Alice Ruth L. AVERY, Appellant/Respondent,**

v.

**Gerald W. AVERY, Respondent/Appellant.**

No. 4147.

Court of Appeals of South Carolina.

Heard June 14, 2006.

Decided Aug. 14, 2006.

306

James M. Saleeby, Sr., of Florence and Marian D. Nettles, of Lake City, for Appellant–Respondent.

Cheryl Turner Hopkins, of Florence and Stephanie Pendarvis McDonald, of Charleston, for Respondent–Appellant.

HEARN, C.J.:

This is a cross-appeal from an order of the family court, granting Alice Ruth L. Avery and Gerald W. Avery a decree of separate maintenance and support, declining to award alimony to Wife or attorney's fees to either party, and awarding Husband 62.5 percent of the $1.5 million marital estate. On appeal, Wife argues she is entitled to alimony, a larger portion of the marital estate, and attorney's fees. She also argues the family court's valuation of her jewelry and mink coat was inflated. Husband argues the family court failed to include certain funds in the marital estate and erred by including certain other funds. We affirm in part, reverse in part, and remand.

## FACTS

After twenty-five years of marriage, Husband and Wife separated in February 2004. At the time of the final hearing, which took place on December 15, 2004, Husband was sixty-seven years old, and Wife was fifty-eight years old. The parties have no children together, though they have children from previous relationships. Husband has two adult daughters, both of whom have children. Wife has one forty-year-old daughter who is autistic and lives in a group home.

During the marriage, Husband worked as a chemical engineer and had management responsibilities. For much of his career he worked overseas in places such as Egypt, Pakistan, Saudi Arabia, China, and several countries in Europe. While he was out of the country, Husband sent his paychecks to Wife, and she was in charge of their financial affairs and maintaining the marital home. Wife has a business college degree, but with the consent of Husband, did not work outside the home for much of the marriage. In fact, her only job outside the home was working part-time for Husband's business, which she did only sporadically during the marriage. Together the parties amassed a large estate, totaling over $1.5 million.

In October of 2002, Husband had a heart attack, and he retired shortly thereafter. After Husband's retirement, the parties' relationship, which may already have had its difficulties, took a turn for the worse. Wife testified Husband belittled her family and was very controlling of her. In 2003, she suggested they get counseling, but Husband refused. Wife left the marital home because she "just couldn't take the constant bickering."

According to Husband, the couple's problems coincided with Wife's renewed friendship with an old friend, Gayle Britt. He testified that Wife spent more time with Gayle than she did with him. He also believed Wife's greed was a driving force behind the parties' separation. He testified that he wanted to reconcile with Wife, but when he suggested counseling, Wife would go only on the condition that Husband give her "half of the assets" in their vacation home in Beaufort, South Carolina.

On February 4, 2004, the parties had a serious argument, and Wife left the marital home. On February 9, Husband gave $89,000 to his children, purportedly to pay for his grandchildren's college education. Most of this money, $71,500, came from a money market account. On February 20, Wife filed a complaint seeking an order for separate maintenance and support.

At the final hearing, several issues were litigated. Wife sought alimony, a fifty percent division of the marital estate, and attorney's fees. She also argued that the money market

account Husband divested just days before she filed her complaint should be included in the marital estate.

Husband argued Wife should not receive alimony because he was no longer earning an income. He also argued he was entitled to more than half of the marital estate because his contributions accounted for ninety-nine percent of the parties' assets. During the course of the litigation, Husband questioned how Wife had the money to add approximately $54,000 to a bank CD that was jointly titled between Wife and her aunt. Both Wife and her aunt testified that this deposit was made with the aunt's money. Husband, however, believed it was money Wife had siphoned off from the marital estate over the years, and he sought to have the money included in the marital estate. Husband also sought to include a checking account jointly titled to Wife and her aunt, which contained $64,000. Both Wife and her aunt testified this was also the aunt's money. The family court sided with Wife and her aunt as to both accounts, and declined to include the $54,000 bank CD or the $64,000 checking account in the marital estate.

As to the money market account with the $71,500 Husband gave to his children, Husband argued he inherited those funds when his mother died in 1999.[1] The family court, however, included the $71,500 in the marital estate.

The family court specifically found neither party was at fault for the marriage's deterioration, but declined to award Wife alimony because Husband no longer earned an income. The family court also awarded Husband 62.5 percent of the marital estate and ordered the parties to pay their own attorney's fees. Both parties filed Rule 59(e) motions. In its order addressing those motions, the family court clarified how certain funds held in escrow were to be disbursed and otherwise denied both motions to reconsider. Both parties appeal.

## STANDARD OF REVIEW

■ When considering an appeal from the family court, appellate courts have the authority to find the facts in accordance with their view of the preponderance of the evidence.

---

1. With interest over the years, Husband testified that his $51,660 inheritance had grown to $71,500.

*Ex parte Morris,* 367 S.C. 56, 61, 624 S.E.2d 649, 652 (2006). However, appellate courts defer to the family court judge's determinations of witnesses' credibility because the family court judge had the opportunity to see and hear the witnesses testify. *Scott v. Scott,* 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003).

## LAW/ANALYSIS

### I. Wife's Appeal

Wife argues the family court erred in (1) awarding her a mere 37.5 percent of the marital estate; (2) failing to award her alimony, especially in light of the lopsided equitable distribution; (3) valuing her jewelry at $40,000; (4) valuing her twenty-year-old mink coat at $8,000; and (5) failing to award her attorney's fees and costs. We address these issues in turn below.

### A. Equitable Distribution

Wife argues the family court erred in awarding her 37.5 percent of the marital estate when this was a long-term marriage throughout which she provided homemaker services, and neither party was found to be at fault for the marriage's breakup. We agree.

The division of marital property is in the family court's discretion and will not be disturbed on appeal absent an abuse of that discretion. *Craig v. Craig,* 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005). Section 20–7–472 of the South Carolina Code (Supp.2005) provides fifteen factors for the family court to consider when apportioning marital property, and it is within the family court's discretion to determine how much weight to give each of these factors. On appeal, even if this court might have weighed specific factors differently, we will affirm the family court's apportionment so long as it is fair overall. *Greene v. Greene,* 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App.2002).

In making its decision to award Husband the bulk of the marital estate, the family court focused on the parties' financial contributions to the marriage. Specifically, the family court found:

It appears Husband has contributed 99%, or thereabouts, of the funds into this marriage. On the other hand, without objection by Husband, Wife contributed through her services as a homemaker. She also, for a period of time, assisted Husband in one of his business ventures serving as his bookkeeper/secretary. Wife also assisted in overseeing the building and selling of several homes during the marriage. Wife did physical work in and around the home and houses built for resale during the marriage and, as mentioned, maintained the home. Wife was frugal, buying most items "on sale." Husband indicated he completely trusted Wife's handling of finances during the marriage.

Despite the family court's recognition of Wife's contributions as a homemaker, the family court divided the marital estate in such a way that Husband received over one-and-a-half times the amount of property Wife received. Because the court specifically found neither party to be at fault for the couple's separation, this uneven division must have been based almost exclusively on the parties' direct financial contributions to their accumulation of wealth.

In our recent case of *Doe v. Doe,* 634 S.E.2d 51(S.C. Ct.App. 2006), which involved a marriage of over thirty years, we found the family court abused its discretion by awarding Husband seventy percent of the marital estate, despite Husband having been the primary breadwinner in the family. We stated: "While there is certainly no recognized presumption in favor of a fifty-fifty division, we approve equal division as an appropriate starting point for a family court judge attempting to divide an estate of a long-term marriage." *Id.* at 56 (citing Roy T. Stuckey, Marital Litigation in South Carolina (3rd ed. 2001 and Supp. 2005)). A fifty-fifty starting point is appropriate, we went on to explain, because in many long-term marriages, the spouses have an agreed-upon arrangement whereby one spouse works outside the home and is the primary wage earner while the other spouse makes little or no money but provides a valuable service in maintaining the household. Under these circumstances, "it would be unfair to the spouse who undertook household duties for the family court to apportion the marital estate solely based on the parties' direct financial contributions." Id. at 56 (citing *Walker v. Walker,* 295 S.C. 286, 288, 368 S.E.2d 89, 90 (Ct.App.1988) ("Equitable

distribution is based on a recognition that marriage is, among other things, an economic partnership.")).

That is not to say that all long term marriages ending in divorce will necessarily have estates that are divided equally. The family court is charged with looking at all fifteen factors of section 20–7–472, and may give one party a larger portion of the estate based on the circumstances of each case. For instance, although we reversed the seventy-thirty split in *Doe*, we modified the award to a sixty-forty division because Wife's adultery caused the marriage's dissolution.

In the case before us, however, we cannot discern any special circumstances tilting the equitable division scale in favor of one spouse. This was a lengthy marriage wherein the parties agreed to a traditional breadwinner/homemaker arrangement. With such an arrangement, both parties made significant, albeit different, contributions to the acquisition, preservation, depreciation, and appreciation in value of their marital property. Neither party was at fault for the separation, nor does either party earn a significant income.[2] Although Husband suffered a heart attack in October of 2002, he testified that most of his medical expenses are paid through Medicare. The parties are not likely to pursue careers for which they will need additional training or education, and neither party has significant non-marital property. Finally, neither party has support obligations, though Wife does provide clothing to her disabled daughter.

Considering the circumstances of this case, we find the family court abused its discretion by awarding twenty-five percent more of the marital estate to Husband. Accordingly, we reverse the 62.5–37.5 split and remand the case so that the marital estate can be divided equally between the spouses.

## B. Alimony

 Wife argues the family court erred in denying her alimony. We disagree.

---

2. According to Husband's financial declaration, he receives $2,040 per month from social security and other pensions. Wife's financial declaration indicates she receives $400 per month from social security.

■ The decision to award alimony rests within the sound discretion of the family court and will not be disturbed on appeal absent an abuse of discretion. *Craig v. Craig,* 365 S.C. 285, 292, 617 S.E.2d 359, 362 (2005). When awarding alimony, the family court considers the following thirteen factors set forth in section 20–3–130(C) (Supp.2005) of the South Carolina Code: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) other relevant factors the court considers relevant.

In its final order, the family court specifically stated it "considered all applicable factors in [20–3–130]." After considering those factors, the family court declined to award Wife alimony because Husband had very little income to speak of and Wife would receive a substantial sum in the equitable division. In our opinion today, we increase the amount of property Wife receives in the equitable division. Considering this equal division of the marital estate and Husband's meager income, we find the family court did not abuse its discretion in denying Wife alimony.

### C. Valuation of Jewelry and Mink Coat

Wife argues the family court erred in valuing her jewelry at $40,000. Specifically, she contends the family court (1) failed to specify which pieces of jewelry were included in the marital estate, and (2) erred by using the jewelry's insurance value to determine its fair market value. She further argues the family court erred in valuing her twenty-year-old mink coat at $8,000. We disagree.

■ When making an equitable distribution of marital property, the family court is charged with identifying the marital property and determining the property's fair market value. *Cannon v. Cannon,* 321 S.C. 44, 48, 467 S.E.2d 132, 134 (Ct.App.1996). A family court's valuation determination will

be affirmed on appeal if the valuation is within the range of values presented by the parties. *Woodward v. Woodward,* 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct.App.1987).

At trial, Wife submitted an appraisal, which listed seven pieces of jewelry valued at $2,900. Wife testified she had other, less expensive jewelry at home that was worth a total of $300. Husband, who claimed there were twelve pieces of jewelry purchased during the marriage, valued the jewelry at over $50,000. In support of his valuation, Husband submitted an insurance document, listing twelve pieces of jewelry that were insured for $40,305. Husband also submitted numerous appraisals from 1987 through 2001 that supported, and in some cases exceeded, the values listed on the insurance documents. Additionally, Husband testified that he purchased an Ebel watch for Wife during their marriage and that the watch was worth $4,000.

In its order, the family court valued Wife's jewelry at $40,000, explaining: "I have discounted the value of Wife's engagement ring and am using, essentially, the value the parties have utilized for insurance purpose for a number of years." In so ruling, it is clear the family court included all pieces of jewelry testified to, with the exception of Wife's engagement ring. Considering the evidence presented by the parties, we find the family court did not abuse its discretion in valuing the jewelry at $40,000, a figure within the range of values presented by the parties. *See id.*

As for the mink coat, Wife testified that its fair market value is $1,000. Husband testified its value was $8,000, and submitted into evidence a document showing that as the amount for which the coat was insured. While we recognize that an item's insurance value may be higher than its fair market value, the family court judge only had two values offered to him: one from Wife, which was unsupported by documentation, and one from Husband, which was supported by the parties' decision to insure the coat for $8,000. Under these circumstances, we find no error in the family court's decision to adopt Husband's estimation of the coat's fair market value. *See id.*; *cf. Honea v. Honea,* 292 S.C. 456, 458, 357 S.E.2d 191, 192 (Ct.App.1987) ("[A] party cannot sit back at trial without offering proof, then come to this Court

complaining of the insufficiency of the evidence to support the family court's findings.").

### D. Attorney's Fees

■ Lastly, Wife argues the family court erred in failing to award her attorney's fees. We disagree.

■ In deciding whether to award attorney's fees, the family court should consider: (1) each party's ability to pay his or her own fees; (2) the beneficial results obtained by counsel; (3) the respective financial condition of each party; and (4) the effect of the fee on each party's standard of living. *Upchurch v. Upchurch,* 367 S.C. 16, 28, 624 S.E.2d 643, 648–49 (2006). The family court's decision regarding attorney's fees will not be disturbed absent an abuse of discretion. *Green v. Green,* 320 S.C. 347, 353, 465 S.E.2d 130, 134 (Ct.App.1995).

In light of our decision today, the parties' ability to pay attorney's fees, the results obtained by counsel, their respective financial conditions, and the effect of the fee on their standard of living are virtually equal. Thus, we agree with the family court's decision requiring each to pay his or her own attorney's fees.

### II. Husband's Appeal

■ Husband first argues the family court erred in failing to include in the marital estate $54,000 Wife added to a bank CD and $64,000 Wife had in a checking account with her aunt. We disagree.

Both Wife and aunt testified that the funds in the CD and checking account belonged exclusively to aunt. While Husband called into question how aunt had accumulated such large amounts of money, the family court ultimately found Wife and aunt to be credible, and declined to include the money in the parties' marital estate. Because we defer to the family court on issues of witnesses' credibility, we find no reversible error in the refusal to include these accounts in the marital estate. *See Scott v. Scott,* 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003).

■ Next, Husband argues the family court erred by including in the marital estate a $71,500 money market ac-

count he claims contained the money he inherited when his mother died. We note the family court did not rule on whether these particular funds derived from Husband's inheritance. Rather, it found the money should be included in the marital estate because Husband divested himself of it while the parties were contemplating separation. Husband filed a Rule 59(e), SCRCP, motion, requesting a ruling on this issue, but again, the family court did not rule on it. Therefore, we remand the issue to the family court to make a finding as to whether the funds Husband divested to his children during the parties' separation were the funds he inherited after his mother passed away.

## CONCLUSION

We find the family court erred in awarding Husband 62.5 percent of the marital estate; we modify the division to a fifty-fifty split; and, we remand the actual division of the property to the family court. We affirm the family court's valuation of Wife's jewelry and mink coat, its refusal to award Wife alimony and attorney's fees, and its refusal to include $54,000 from a CD and $64,000 from a checking account owned by Wife's aunt. Finally, we remand the issue of whether the $71,500 CD that Husband divested to his children during separation was non-marital, inherited funds. Accordingly, the family court's order is

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

GOOLSBY, J. and CURETON, A.J., *concur.*