THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Lisa Sochko Respondent/Appellant,
v.
Jeffrey Sochko Appellant/Respondent.
 
 
 

Appeal From York County
 Robert E. Guess, Family Court Judge

Unpublished Opinion No. 2007-UP-082
Submitted February 1, 2007  Filed February 15, 2007 

AFFIRMED

 
 
 
George W. Speedy, of Camden, for Appellant- Respondent.
Thomas F. McDow, of Rock Hill, for Respondent-Appellant.
 
 
 

PER CURIAM:  In this domestic action, Lisa Sochko (Wife) appeals the order of the family court distributing $120,000 she and Jeffrey Sochko (Husband) received when they settled a claim for stucco damage to their home.  Husband also appeals the family courts award of attorneys fees to Wife.  We affirm.[1]
FACTS
On November 23, 1999, after fourteen years of marriage, Wife instituted this action for divorce.  Wife sought custody of the parties three children, child support, equitable apportionment of the marital property, and attorneys fees and costs.  Husband answered, seeking alimony, custody, equitable apportionment and divorce based upon Wifes adultery.[2]    
On December 13, 1999, the family court issued a temporary order awarding joint custody to both parents, with Wife as the primary custodian.  Husband was ordered to pay $444 per month in child support.  Shortly thereafter, Husband filed a motion seeking to transfer custody to him, which the family court denied.  On September 22, 2000, Wife filed a rule to show cause against Husband for failure to pay child support.  By the time of the hearing, Husband had paid close to $800 and made provisions to pay the past arrearages.  
Thereafter, numerous motions were filed, including a motion by Wife, which was granted by the family court, to have the guardian ad litem removed.  In 2001, with trial only days away, Husband replaced his attorney and received a continuance.  
By the time the case was set for trial, in February of 2002, the parties had settled many of the issues, including the issue of custody, which had been the primary source of the parties disagreement.  The parties agreed to joint custody with Wife being the primary custodian.  After trial, the family court issued the parties a divorce based upon the ground of one years separation.  Further, the family court ordered Husband to pay child support and denied his request for alimony.  The court found neither party was entitled to attorneys fees.  
Both parties filed a Rule 59(e), SCRCP, motion to have the family court reconsider its divorce decree.  Specifically, Wife argued the judge had failed to consider Husbands actions in prolonging the litigation.  By order dated August 5, 2002, the family court awarded Wife attorneys fees; however, the court denied Husbands motion.  
Although the record is somewhat unclear, it appears the divorce was bifurcated, leaving the issue of the marital home to be decided later due to ongoing litigation involving stucco damage to the home.  The parties eventually settled their stucco claim for $120,000.  
At the September 11, 2003 hearing, the parties agreed that the equity in the marital home would be divided in half, with Wife receiving ownership of the house.  Therefore, the only issues left to determine were the outstanding liens on the home and the apportionment of the stucco settlement.  During the hearing, Wife attempted to introduce Charles Burns, Jr., the contractor who performed the stucco repairs, as a witness.  Husband objected based on the ground Wife did not list Burns as a witness.  The family court sustained the objection.  Additionally, the court allowed Wife to argue that $14,000 the parties received from her father for down payment for their home was a loan, and thus marital debt subject to equitable apportionment.  Husband maintained the money was a gift.  
On November 11, 2003, the family court issued its final order, finding the cost of the stucco repairs amounted to $40,150.  After assessing the equity in the home, the mortgage indebtedness, the repairs performed on the home, and the remaining stucco settlement, the judge found Wife was required to pay Husband $3,696.85 as his share of apportionment of the house.  In reaching this figure, the family court considered that Husband already had possession of $38,613.39, which amounted to his share of the stucco settlement after attorneys fees and costs.  
Husband filed a Rule 59(e) motion, arguing the family court erred in assessing the value of the marital home and stucco settlement.  Husband argued the equity in the home and the stucco settlement should be apportioned separately and the family court agreed.  In its amended final order, the family court, cognizant that under the new order Wife owed a substantially larger amount than under the previous order, found Husband was entitled to $42,310 for his share of the equity in the house and stucco settlement.  Both parties appeal.    
STANDARD OF REVIEW
On appeal from the family court, this court has the authority to find facts in accordance with its own view of the preponderance of the evidence.  Dearybury v. Dearybury, 351 S.C. 278, 283, 569 S.E.2d 367, 369 (2002); Lanier v. Lanier, 364 S.C. 211, 215, 612 S.E.2d 456, 458 (Ct. App. 2005); Nasser-Moghaddassi v. Moghaddassi, 364 S.C. 182, 189, 612 S.E.2d 707, 711 (Ct. App. 2005); Emery v. Smith, 361 S.C. 207, 213, 603 S.E.2d 598, 601 (Ct. App. 2004) (citing Rutherford v. Rutherford, 307 S.C. 199, 414 S.E.2d 157 (1992)).  This broad scope of review does not require us to disregard the family courts findings, and we remain mindful of the fact that the family court, who saw and heard the parties, was in a better position to evaluate their credibility and assign weight to their testimony.  Cherry v. Thomasson, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981); Holler v. Holler, 364 S.C. 256, 261, 612 S.E.2d 469, 472 (Ct. App. 2005); see also Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 477 S.E.2d 476 (Ct. App. 1996) (stating that because the appellate court lacks the opportunity to directly observe the witnesses, it should accord great deference to the
family courts findings where matters of credibility are involved).
LAW/ANALYSIS
I. Wifes Appeal
A. Judicial Estoppel 
Wife argues the family court erred in assessing only $40,150, the amount the parties paid to repair the stucco damage to the house, as the stucco damage.  Wife maintains even though the amount to repair the damage was $40,150, under the doctrine of judicial estoppel, Husband is estopped from claiming the stucco damage to the house was less than $120,000, the amount the parties received as the settlement of the stucco claim.  We disagree.
Initially, we note the argument relating to judicial estoppel is not preserved for our review.  To preserve an issue for appellate review, the issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the family court. 
Charleston County Dept of Soc. Servs. v. Jackson, 368 S.C. 87, 104-05, 627 S.E.2d 765, 775 (Ct. App. 2006) (citing Staubes v. City of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review.)); Jones v. Daley, 363 S.C. 310, 315, 609 S.E.2d 597, 599 (Ct. App. 2005).  Wife did not raise this argument to the family court.  Additionally, Wife did not raise this issue in her rule 59(e), SCRCP, motion.  Therefore, this issue is not preserved.   See Washington v. Washington, 308 S.C. 549, 551, 419 S.E.2d 779, 781 (1992) (holding when an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP motion to amend, the issue is not properly presented to an appellate court for review); Hailey v. Hailey, 357 S.C. 18, 24, 590 S.E.2d 495, 498 (Ct. App. 2003) (finding Wife did not raise argument that Husband was judicially estopped from raising issue of decrease of alimony to family court and thus, issue was not preserved for appellate review).
Even if the issue was preserved, we find judicial estoppel inapplicable under the facts of this case. Under the doctrine of judicial estoppel, Wife contends Husband maintained two inconsistent positions.  During the stucco litigation, Husband maintained the damage to the house was $120,000, and in the current action he maintains the damage was only $40,150.  The doctrine of judicial estoppel is an equitable concept that prevents a litigant from asserting a position inconsistent with, or in conflict with, one the litigant has previously asserted in the same or related proceeding.   Cothran v. Brown, 357 S.C. 210, 215, 592 S.E.2d 629, 631 (2004) (citing Colleton Reg. Hosp. v. MRS Med. Rev. Systs., 866 F.Supp. 896, 900 (D.S.C. 1994)). The purpose of judicial estoppel is to protect the integrity of the courts rather than to protect litigants from allegedly improper or deceitful conduct by their adversaries.  Hawkins v. Bruno Yacht Sales, 353 S.C. 31, 42, 577 S.E.2d 202, 208 (2003) (quoting Hayne Fed. Credit Union v. Bailey, 327 S.C. 242, 251, 489 S.E.2d 472, 477 (1997)).  
Further, [b]ecause judicial estoppel is an equitable concept, depending upon the facts and circumstances of each
individual case, application of the doctrine is discretionary. Carrigg v. Cannon, 347 S.C. 75, 83-84, 552 S.E.2d 767, 772 (Ct. App. 2001) (citing Hawkins v. Bruno Yacht Sales, 342 S.C. 352, 368, 536 S.E.2d 698, 706 (Ct. App, 2000)); see also Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 (4th Cir. 1982) (observing
judicial estoppel should be applied with caution); 28 Am. Jur. 2d Estoppel & Waiver § 75 (2000) (noting
judicial estoppel is an equitable concept that must be applied with caution and in the narrowest of circumstances at the discretion of the trial court)).  In order for judicial estoppel to apply in a given case, the following elements must be met:

 (1) two inconsistent positions taken by the same party or parties in privity with one another; (2) the positions must
be taken in the same or related proceedings involving the same party or parties in privity with each other; (3) the party taking the position must have been successful in maintaining that position and have received some benefit; (4) the inconsistency must be part of an intentional effort to mislead the court; and (5) the two positions must be totally inconsistent. 

Cothran, 357 S.C. at 216, 592 S.E.2d at 631 (citing Carrigg v. Cannon, 347 S.C. 75, 83, 552 S.E.2d 767, 772 (Ct. App. 2001)).
During the stucco litigation, Husband and Wife both claimed the damage to the house was over $120,000, and the parties agreed to settle for that amount.  Subsequently, Wife made $69,800 worth of repairs to the home, $40,150 of which were found to be repairs to the house due to stucco damage. 
We find the family court properly concluded the cost to repair the stucco damage was the correct way to assess the damage to the house.  Therefore, the court properly divided the remaining portion of the settlement between the parties.  If we were to adopt the approach urged by Wife and allow her to receive the entire stucco settlement despite the fact that the repairs were significantly less, then she would receive a windfall and Husband would be denied his rightful share of the settlement.  
Moreover, we find judicial estoppel does not apply to the facts of this case.  The theory of judicial estoppel is premised upon the notion that allowing a party to enter a court of law asserting a factual position inconsistent with a position taken earlier in a related action demeans the entire judicial process.  In this case, we can discern no threat to the integrity of the court by allowing Husband to receive his share of the benefit that the cost to repair the stucco was less then the settlement amount.  In fact, we find a substantial injustice would occur if Wife were allowed to retain the remaining settlement amount when the house itself was marital property, and therefore subject to equitable distribution.  See Carrigg v. Cannon, 347 S.C. 75, 84, 552 S.E.2d 767, 772 (Ct. App. 2001) (The discretionary nature of
judicial estoppel is such that it should not be applied if doing so would work an injustice against the party being estopped while simultaneously subverting the
judicial process.).  Accordingly, we decline to apply judicial estoppel to this action and find the family court properly assessed the stucco damages.
B. Marital Home

 Wife argues the family court erred in its valuation of the marital home.  Wife contends the family court erroneously failed to consider the stucco damage in assessing the homes value.  We disagree.
When making an equitable distribution of marital property, the
family court must identify marital property and determine the fair market value of the property. Cannon v. Cannon, 321 S.C. 44, 48, 467 S.E.2d 132, 134 (Ct. App. 1996); Noll v. Noll, 297 S.C. 190, 192, 375 S.E.2d 338, 340 (Ct. App. 1988).  The
family court is entitled to broad discretion in valuing the marital property. Pirri v. Pirri, 631 S.E.2d 279, 283 (Ct. App. 2006) (citing Roe v. Roe, 311 S.C. 471, 478, 429 S.E.2d 830, 835 (Ct. App. 1993)).  The valuation of the family court will
be affirmed on appeal if the valuation is within the range of values presented by the parties.   Avery v. Avery,  370 S.C. 304, 314, 634 S.E.2d 668, 673 (Ct. App. 2006) (citing Woodward v. Woodward, 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct. App. 1987) (affirming the valuation of property in the range of evidence presented)).
The final order provides, The value of the house for purposes of the division as of the date of filing is $251,000, a figure which assumes all repairs to any existing stucco damage.  In determining the value of the house, the family court had three different appraisals to choose from.  All of the experts appraisals of the house included a value which assumed the stucco was fully repaired and the appraisals ranged from $251,000 to $275,000.  The family court chose the lowest appraisal, which actually benefited Wife because the parties agreed she would receive the house, and, therefore, the amount she had to pay to Husband as equity was less than it would have been had the family court used a higher appraisal.  Further, the final order clearly states it considered the stucco damage in assessing the value of the house.  Accordingly, we find the family court did not abuse its discretion in valuing the marital home.  
Next, Wife argues the family court erred in assessing the equity in the marital home.  Wife maintains the family court failed to consider the stucco damage was $120,000, and, therefore, erroneously found the equity in the home to be $129,595.22 rather than $9,595.22.  Because we find the family court properly assessed the stucco damage, we find no error in the courts assessment of the equity in the home.[3]  
C.  Stucco Settlement 
Wife argues the family court erred in its division of the stucco settlement.  We disagree. 
In the final order, the family court appraised the house after the stucco repairs at $251,000 and then subtracted $121,404.78, the amount of mortgage indebtedness, and $40,150, the cost of the stucco repairs.  The family court also subtracted $4,825.22 for litigation costs Wife had advanced.  After all of the deductions, the family court arrived at $84,620, divided that amount by two and found each party was entitled to $42,310.  Because Husband and Wife had previously split $38,613.39 of the stucco settlement, Wife was only required to pay Husband $3,696.85 as his share of the division of the marital house and settlement.  
In the amended final order, the family court assessed the equity in the house and the stucco settlement separately.  The family court subtracted the mortgage indebtedness from the houses value in order to establish the equity in the house, which was $129,595.22, with each party entitled to $64,797.61.  The family court then took the stucco settlement and subtracted attorneys fees to arrive at $77,226.28.  The family court then subtracted $40,150 for the repairs to the stucco and $4,825.22 for litigation costs advanced by Wife for a total of $32,251.06, with each party entitled to $16,125.53.  The family court then added each partys share of the house equity and the left over settlement amount and established that each party was entitled to $80,923.14.  The family court reasoned that because Husband had already received $38,613.14[4] from the stucco settlement, it subtracted that amount from the $80,923.14 Husband was entitled.  Thus, the family court concluded Wife was required to pay Husband an additional $42,310. 
We can perceive of no error in the mathematical formula utilized by the family court in the amended final order.  In the final order, the court utilized a formula for division of the stucco settlement that, in essence, awarded the entire settlement to Wife for use in repairing the house and then subtracted the amount received by Husband from the settlement from what would have been his share of the equity in the house.  The formula used in the final order fails to consider the fact the stucco settlement was substantially larger than the cost to repair the stucco damage.  By assessing the equity in the house and stucco settlement separately, the court ensured that each party was awarded their fair share of both.  Accordingly, we find the family court properly divided the stucco settlement.  
D.     Exclusion of Testimony 
Wife alleges the family court erred in excluding the testimony of Charles Burns, Jr., the contractor who repaired the stucco damage to the home, as a witness.  By excluding the testimony, Wife maintains she was unable to establish how much of the $68,800 worth of repairs she made to the home were related to the stucco damage.  For the reasons set forth below, we decline to reach this issue. 
During the hearing, Wife introduced Burns as a witness and Husband objected on the ground that he was not aware Burns was going to testify.  Further, Husband complained the repairs were done without his permission and he was not given an opportunity to have an expert assess the damage to the house.  The family court sustained the objection, finding Burns was not listed to testify and excluded him as a witness.  After the family court dismissed Burns, Wife did not make a follow-up proffer of the testimony.  Without an adequate proffer, there is nothing before us to review.  See McKissick v. J.F. Cleckley & Co., 325 S.C. 327, 349, 479 S.E.2d 67, 78 (Ct. App. 1996) (finding that absent a proffer of the excluded testimony, there is nothing before the court to review); Vaughn v. City of Anderson, 300 S.C. 55, 59-60, 386 S.E.2d 297, 300 (Ct. App. 1989) (There was no proffer of the testimony. Without the proffer of the testimony there is nothing for this court to review.).  
The record before us is devoid of any showing of what the excluded testimony would have been, and, therefore, we cannot determine any prejudice Wife suffered.  Accordingly, even if the family court did err in excluding the testimony, Wife has failed to show any prejudice she suffered because all the record reveals is that Burns performed the repairs.  See Vaughn, 300 S.C. at 58, 386 S.E.2d at 299 (Ct. App. 1989) (A ruling on the admission of evidence is within the sound discretion of the trial judge and will not be disturbed absent an abuse of discretion and a showing of prejudice.) (citing Manning v. City of Columbia, 297 S.C. 451, 377 S.E.2d 335 (1989)).
E. Loan from Wifes Father
Wife alleges the family court erred in finding the parties were not obligated to pay Wifes father $14,000 that he loaned to the parties to purchase their home.  Wife contends the family court erroneously concluded the $14,000 was not marital debt subject to equitable apportionment.  We disagree.  
When the parties purchased their home, Wifes father gave them $42,500, which Wife maintains is a loan and Husband maintains is a gift.  Wife and Husband still had to finance the rest of the purchase price.  Towards that end, Wifes father wrote a letter to First Federal Bank which provided:

I am writing you to inform you that I am giving my daughter Lisa Dietz Sochko and her family a gift of $42,500.00 to purchase a new home . . . . I am pleased to be in a position to help my daughter and I am not expecting her to re-pay me.  This is not a loan but instead a gift!  Her house is presently on the market for sale.  If it does not sell by the time of the final closing on the new construction, I will make all mortgage payments for her until it is sold.

Shortly thereafter, Wife wrote a letter to her dad, dated May 10, 1999, signed by her and Husband which stated:

Jeff and I will pay you the full amount that you lend [sic] us for the house $42,500.  We will also be totally responsible for making our other mortgage payment in case it doesnt sell.  Thank you so much for this loan.  We appreciate it more then we can tell you.

When the parties house sold, they returned $28,500 to Wifes father, leaving an alleged $14,000 balance.  
The family court found the two letters were contradictory, because the official statement made to the lender characterized the money as a gift, while the unofficial letter characterized the transfer of funds as a loan.  The court concluded that the contradictory nature of the letters allowed the parties to characterize the transfer of funds in anyway which suited their purpose.  The court refused to indulge the parties in this exercise.  Further, the judge found the money had not been repaid in ten years nor was there any evidence of any repayment schedule.  Accordingly, he declined to find the money was marital debt.  
We find the family court properly found the money was not a loan, and therefore, not subject to equitable apportionment as marital debt.  Wifes father wrote an official letter to a lending institution claiming the money was a gift.  If the money was in fact a loan, then all of the parties involved defrauded the lender.  In light of the conflicting evidence on the subject, this court will not be involved in characterizing the transfer of funds in anyway that is different than what Wifes father presented officially to the lending institution.  In our view, a party cannot engage in chicanery in order to obtain financing and then later claim, in a court of law, a position contrary to the one officially taken.  Therefore, we find no error by the family court on this point. 
F.  Wifes Attorneys Fees
Wife argues that if she is successful on appeal, this court should reverse the family courts order finding she was not entitled to attorneys fees for the September 11, 2003 hearing.  She concedes that if she is unsuccessful, then the family court correctly decided the issue.  Because we affirm the order of the family court, we find the family court properly found Wife was not entitled to attorneys fees for the September hearing.   
II.      Husbands Appeal

 Husband alleges the family court erred in awarding Wife attorneys fees for the trial on February 4, 5, and 6, 2002.  We disagree.
Section 20-3-120 of the South Carolina Code (1985) authorizes the family court to order payment of suit money, including attorneys fees, to either party in an action for divorce.  The family court is awarded broad discretion in deciding whether to award attorneys fees and its decision will not be overturned on appeal absent an abuse of discretion. Patel v. Patel, 359 S.C. 515, 553, 559 S.E.2d 114, 123 (2004); Donahue v. Donahue, 299 S.C. 353, 365, 384 S.E.2d 741, 478 (1989); Stevenson v. Stevenson, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988).
South Carolina case law and court rules make clear that when a statute permits an award of attorneys fees, the family court must make specific findings of fact on the record
for each of the required factors to be considered. 
Griffith v. Griffith, 332 S.C. 630, 646, 506 S.E.2d 526, 534-35 (Ct. App. 1998) (quoting Rule 26(a), SCRFC) (An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the courts decision.).  In general, where a family court order fails to comply with Rule 26(a), an appellate court should reverse and remand so the Family Court may make specific findings of fact.  Badeaux v. Davis, 337 S.C. 195, 202-03, 522 S.E.2d 835, 839 (Ct. App. 1999) (citing Blumberg v. Nealco, Inc., 310 S.C. 492, 427 S.E.2d 659 (1993)). However, when an order from the family court is issued in violation of Rule 26(a), SCRFC, the
appellate court may remand the matter to the [family] court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.  Griffith, 332 S.C. at 646-47, 506 S.E.2d at 535 (citation omitted).  
Additionally, in Glasscock v. Glasscock, the South Carolina Supreme Court clarified the six factors used to determine whether attorneys fees are warranted in a given case:

(1) nature, extent, and difficulty of the case;
(2) time necessarily devoted to the case;
(3) professional standing of counsel;
(4) contingency of compensation
(5) beneficial results obtained;
(6) customary legal fees for similar services

304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).   
In the present case, the family court initially found Wife was not entitled to attorneys fees.  After Wife filed a Rule 59(e), SCRCP, motion to reconsider, the family court awarded her attorneys fees.  The family court found Wife was entitled to the fees she incurred for Husbands failure to pay child support after the initial temporary hearing, for issues relating to the removal of the first guardian ad litem, and for issues relating to the valuation of property.  Additionally, the court found Wife was entitled to fees incurred because of the delays Husband caused by having three different attorneys throughout the course of the litigation. 
The family court noted Husbands last change of attorneys occurred within days of the scheduled trial, after Wifes attorney had already prepared for trial and had issued service of subpoenas for witnesses.  The judge found Husband prolonged the litigation and created unnecessary costs for Wife.  The judge stated that although Wife had no greater ability to pay fees than Husband, the failure to award her fees and costs would have the effect of significantly reducing the value of her equitable division through no fault of her own and of rewarding Husband for his actions.  The court therefore found Wife was entitled to fees and, accordingly, awarded her a reasonable sum of $10,500 in attorneys fees based upon seventy hours at the rate of $150 per hour.
Despite the fact the family court did not specifically refer to Glasscock and that we believe the courts order to be weak, we nonetheless find it sufficient to sustain the award of attorneys fees to Wife.  The family court considered many of the factors, and focused primarily on the fact Husbands activities, including his failure to pay child support and hiring a new attorney days before trial was set to commence, caused Wife to incur unnecessary expenses.  Therefore, we hold the record is sufficient to affirm the family courts order.   
CONCLUSION
We find Wifes argument regarding judicial estoppel is not preserved for appeal.  Even if the argument had been preserved, judicial estoppel is not applicable to the facts of this case.  Moreover, the family court did not err in its valuation of the marital home or in its distribution of the stucco settlement.  We also find due to Wifes failure to proffer the expert testimony, we cannot review whether the family court erred in excluding the testimony.  Additionally, we find the court correctly characterized the loan from Wifes father as a gift.  Finally, we find the judge did not err in requiring Husband to pay Wifes attorneys fees.  For the foregoing reasons, the decision of the family court is
AFFIRMED.
ANDERSON, KITTREDGE, and SHORT, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  The record is somewhat meager of facts relating to the events leading up to the divorce.  Further, the parties did not include the complaint and answer in the record.  
[3] The equity in the house and its division are more fully discussed below.  
[4] The final order provides Husband already received 38,613.14, instead of $38,613.39, no reason is given for this small discrepancy.