725 S.E.2d 509

**Robert CROSSLAND, Appellant,**

v.

**Shirley CROSSLAND, Respondent.**

**No. 4949.**

Court of Appeals of South Carolina.

Heard Dec. 14, 2011.

Decided March 7, 2012.

Rehearing Denied May 3, 2012.

Melvin D. Bannister, of Columbia, for Appellant.

Brian Dumas, of Columbia, for Respondent.

SHORT, J.

Robert Crossland (Husband) appeals the family court's order awarding Shirley Crossland (Wife) (1) periodic alimony in the amount of $958.50 per month, (2) forty percent of the marital estate, and (3) $16,024.50 in attorney's fees. On appeal, Husband argues the family court erred in awarding Wife alimony, forty percent of the marital estate, and attorney's fees. In addition, Husband argues the family court erred by substituting an amended order after it signed the original final order and decree. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## FACTS

Husband and Wife were married in 1997 and separated for the final time on September 6, 2006. Husband filed the instant divorce action on August 17, 2007. At the time of the divorce hearing on March 1, 2010, Husband was seventy-six years old, and Wife was sixty-two years old. No children were born of the marriage, and both parties had been previously married.

Prior to his marriage, Husband had been employed with the United States Air Force, Hobart Manufacturing Company, and the State of South Carolina, but he had been retired for twenty years when he married Wife. His income prior to and during the marriage consisted of social security benefits, Air Force retirement benefits, and Veterans disability benefits. At the time the parties married, Husband owned two mobile homes, a house he purchased in 1955,[1] and savings in the form of stocks, savings accounts, certificates of deposits, and mutual funds. Shortly after the parties married, Husband added Wife to the accounts identified as his "savings"; however, after Wife left Husband the final time he transferred the money in the joint accounts to an annuity fund in his name

---

1. Wife did not claim the marital estate included the mobile homes or residence.

only. At the time Wife left Husband, the parties estimated the savings accounts contained approximately $180,000, and documents submitted by Wife supported this valuation. At the time of the divorce hearing, Husband testified he had a gross income of $2,429 per month, and $149,000 in the annuity fund.

At the time the parties married, Wife had just returned from an extended mission trip and was not working. She claimed her employer was holding her previous position at a Christian bookstore, but Husband asked her to quit the job so they could travel together. Wife earned $5.00 per hour in her position at the bookstore and did not make enough to support herself. In addition, Wife owned no assets at the time of the marriage. She did not work during the marriage except for a brief period of employment with the Census Bureau and did not own any assets prior to the marriage. Wife testified she earned approximately $26,000 from her position with the Census Bureau. Wife also received $5,632.84 during the marriage in proceeds resulting from an automobile accident, which she deposited into one of the parties' joint accounts. She testified she was eligible for social security benefits but had not applied to begin receiving them.

Husband claimed Wife left their home on September 6, 2006, and did not return. He stated Wife had previously left him three times but eventually returned. He estimated they lived together for only five years of their ten-year marriage due to the various separations initiated by Wife. The final time Wife left, Husband claimed she took a 2000 Mercury Grand Marquis automobile with her, and he sent her title to the car upon her request. Wife testified she left because of Husband's erratic and overly controlling behavior, especially regarding finances.

Both parties suffered from various health problems. Husband suffered two knee replacements and surgeries for heart and prostate issues. Wife was diagnosed with breast cancer, which was successfully treated and continued to be in remission at the time of the divorce hearing. In addition, Wife suffered from back pain since 1989 and had surgery for a torn rotator cuff in 2006. Wife claimed she could not work at all because of fibromyalgia and back pain; however, she admitted

she was employed prior to her marriage despite suffering from back and neck pain. She also testified she would lose her medical insurance as a result of the divorce and would need to procure new insurance at a cost of $330 per month.

After the final hearing, the family court granted Husband a divorce based on one year of continuous separation. In its final order, the family court awarded Wife forty percent of the marital estate, represented by the annuity fund in Husband's name and the amount of $20,442, which the family court found Husband had taken from the joint accounts to purchase an automobile after he filed for divorce. In addition, the family court found Wife is unable to work due to her serious health problems and awarded her alimony in the amount of $958.50 per month. The family court also awarded Wife $16,024.50 in attorney's fees. This appeal followed.

## STANDARD OF REVIEW

"In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). Accordingly, this court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011). However, "we recognize the superior position of the family court judge in making credibility determinations." *Id.* "Moreover, ... an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact." *Id.* "Consequently, the family court's factual findings will be affirmed unless appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court." *Id.* (internal citation and quotation marks omitted).

## LAW/ANALYSIS

### I. Alimony

Husband argues the family court erred in ordering him to pay Wife alimony in the amount of $958.50 per month. We agree.

"The purpose of alimony is to provide the ex-spouse a substitute for the support which was incident to the former

marital relationship." *Id.* at 519, 675 S.E.2d at 823 (internal citation and quotation marks omitted). "Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." *Id.* (internal citation and quotation marks omitted). The family court must "make an alimony award that is fit, equitable, and just if the claim is well founded." *Id.* (internal citation and quotation marks omitted).

■ "South Carolina law provides that the family court judge may grant alimony in such amounts and for such term as the judge considers appropriate under the circumstances." *Davis v. Davis,* 372 S.C. 64, 79, 641 S.E.2d 446, 454 (Ct.App. 2006). Section 20–3–130(C) of the South Carolina Code (Supp. 2011) sets forth the following factors for the family court to consider when awarding alimony:

> (1) the duration of the marriage ...; (2) the physical and emotional condition of each spouse; (3) the educational background of each spouse ...; (4) the employment history and earning potential of each spouse; (5) the standard of living established during the marriage; (6) the current and reasonably anticipated earnings of both spouses; (7) the current and reasonably anticipated expenses and needs of both spouses; (8) the marital and nonmarital properties of the parties ...; (9) custody of the children ...; (10) marital misconduct or fault of either or both parties ...; (11) the tax consequences to each party as a result of the particular form of support awarded; (12) the existence and extent of any support obligation from a prior marriage or for any other reason of either party; and (13) such other factors the court considers relevant.

In the instant case, Wife testified at the divorce hearing that she was eligible to receive social security benefits but had not applied for them. Because there is no evidence in the record the family court considered Wife's eligibility for social security benefits in its determination of alimony, we reverse the family court's alimony award and remand for a determination of Wife's income derived from social security benefits and a recalculation of alimony in light of such benefits and other income, imputed or otherwise. *See Marchant v. Marchant,* 390 S.C. 1, 9, 699 S.E.2d 708, 713 (Ct.App.2010) ("[I]t is proper

to consider a supported spouse's earning capacity and impute income to a spouse who is underemployed or unemployed."); *see also Smith v. Smith,* 386 S.C. 251, 266, 687 S.E.2d 720, 728 (Ct.App.2009) (noting that in deciding whether to award alimony, the family court must consider, inter alia, "the current and reasonably anticipated income of each spouse").

## II. Equitable Distribution

Husband argues the family court erred in awarding Wife forty percent of the marital estate. Specifically, Husband contends the family court erred in (1) finding the annuity fund was transmuted into marital property, (2) valuing the annuity fund, and (3) failing to apply the relevant statutory factors in its determination of equitable distribution. Although we agree with the family court that the annuity fund was transmuted into marital property and with its valuation of the annuity fund, we agree with Husband that the family court erred in awarding Wife forty percent of the marital estate.

### 1. Transmutation of Annuity Fund

"Marital property includes all real and personal property the parties acquired during the marriage and owned as of the date of filing or commencement of marital litigation." *King v. King,* 384 S.C. 134, 143, 681 S.E.2d 609, 614 (Ct.App. 2009). Property acquired prior to the marriage can become marital property under the doctrine of transmutation. *Johnson v. Johnson,* 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct.App. 1988). "Transmutation is a matter of intent to be gleaned from the facts of each case." *Jenkins v. Jenkins,* 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct.App.2001). "The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." *Johnson,* 296 S.C. at 295, 372 S.E.2d at 110–11. "Such evidence may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property." *Id.*

 The evidence in the record supports the family court's finding that the annuity fund was marital property. Shortly after marrying Wife, Husband added Wife's name to the various accounts that made up what he referred to as his "savings." Husband transferred the funds from these accounts into the annuity fund in his name only after the parties separated for the final time. Husband testified he added Wife's name to the accounts after they married so she would have access to his savings in case anything happened to him. In addition, Wife testified she contributed what little income she had to the accounts and lived frugally pursuant to Husband's directives in order to preserve the funds in the accounts. Accordingly, the family court's finding on the issue of transmutation of the annuity fund was proper.

## 2. Valuation of Annuity Fund

 The evidence in the record supports the family court's valuation of the annuity fund at $183,000. Although Husband testified at the divorce hearing that the value of the annuity fund was $149,000, he valued the fund at $183,000 on his financial declaration dated one week before the hearing and valued the fund at approximately $170,000 to $180,000 at the time he married Wife and at the time he filed the divorce action. Similarly, Wife valued the fund at $179,541 on her financial declaration, and documents submitted by Wife, including the couple's 2006 tax return, supported a value of approximately $180,000. Further, despite the family court's pre-trial order requiring Husband to obtain the value of his retirement accounts at the time of the marriage and as of the day of the commencement of the divorce action, Husband produced no records before or at trial documenting the value of such accounts. Accordingly, the family court did not err in valuing the annuity fund at $183,000.

## 3. Division of Marital Estate

 "The doctrine of equitable distribution is based on a recognition that marriage is, among other things, an economic partnership." *Morris v. Morris*, 335 S.C. 525, 531, 517 S.E.2d 720, 723 (Ct.App.1999) (internal citation and quotation marks omitted). "Upon dissolution of the marriage, marital property should be divided and distributed in a manner which fairly

reflects each spouse's contribution to its acquisition, regardless of who holds legal title." *Id.* Section 20–3–620 of the South Carolina Code (Supp.2011) provides the following fifteen factors for the family court to consider in apportioning marital property and affords the family court with the discretion to give weight to each of these factors "as it finds appropriate":

> (1) the duration of the marriage ... [and] the ages of the parties at the time of the marriage and at the time of the divorce ...; (2) marital misconduct or fault of either or both parties ...; (3) the value of the marital property ...; (4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets; (5) the health, both physical and emotional, of each spouse; (6) the need of each spouse or either spouse for additional training or education in order to achieve that spouses's income potential; (7) the nonmarital property of each spouse; (8) the existence or nonexistence of vested retirement benefits for each or either spouse; (9) whether separate maintenance or alimony has been awarded; (10) the desirability of awarding the family home ...; (11) the tax consequences to each or either party as a result of any particular form of equitable apportionment; (12) the existence and extent of any support obligations, from a prior marriage ...; (13) liens and any other encumbrances upon the marital property ...; (14) child custody arrangements and obligations ...; and (15) such other relevant factors as the trial court shall expressly enumerate in its order.

 "While there is certainly no recognized presumption in favor of a fifty-fifty division, we approve equal division as an appropriate starting point for a family court judge attempting to divide an estate of a long-term marriage." *Doe v. Doe,* 370 S.C. 206, 214, 634 S.E.2d 51, 56 (2006). The purpose of the general fifty-fifty division is to protect the nonworking spouse who undertook the household duties and prevent an award "solely based on the parties' direct financial contributions." *Avery v. Avery,* 370 S.C. 304, 311, 634 S.E.2d 668, 672 (Ct.App.2006). However, this court has held that if a party can show special circumstances the family court can "tilt[ ] the equitable division scale in favor of one spouse." *Id.* at 312, 634 S.E.2d at 672.

■■■ Because the evidence in the record demonstrates Husband's disproportionately greater contributions to the marriage, we find the family court erred in awarding Wife forty percent of the marital estate. Wife brought no assets to the marriage and brought in no assets during the marriage. Similarly, she was not earning any income at the time of the parties' marriage and contributed only a negligible amount during the marriage to the parties' joint accounts from earnings from her temporary position with the Census Bureau and proceeds from an automobile accident. The vast majority of the contributions to the parties' accounts during the marriage were made from Husband's social security, retirement, and disability benefits. Similarly, the bulk of the funds in the accounts had been earned by Husband prior to the marriage and resulted from decades of living frugally and saving his earnings. In addition, although the parties were married for ten years before Husband filed for divorce, both parties acknowledge several periods of separation throughout the marriage. Finally, both parties were unemployed for the majority of the marriage and contributed to household duties. Under these circumstances, we find the family court erred in awarding Wife forty percent of the marital estate. Accordingly, we modify the order and award thirty percent of the marital estate to Wife and seventy percent to Husband.

### III. Attorney's Fees

Husband argues the family court erred in ordering him to pay Wife's attorney's fees and costs in the amount of $16,024.50.

■■■ The family court may order one party to pay a reasonable amount to the other party for attorney's fees and costs incurred in maintaining an action for divorce pursuant to S.C.Code Ann. § 20–3–130(H) (Supp.2011). "In determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). "[T]he six factors ... in determining a reasonable attorney's fee [include]: (1) the nature, extent, and

difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Because we reverse and modify, in part, the original order of the family court, we reverse the family court's award of attorney's fees to Wife and remand for redetermination in accordance with this opinion. *See Sexton v. Sexton*, 310 S.C. 501, 503–04, 427 S.E.2d 665, 666 (1993) (reversing and remanding attorney's fees issue for reconsideration when the substantive results achieved by counsel were reversed on appeal).

### IV. Amended Order

 Husband argues the family court erred by substituting an amended order for its original order after signing, but before filing, the original final order and decree. We disagree.

 "Generally, a [family court] loses jurisdiction over a case when the time to file post-trial motions has elapsed." *Russell v. Wachovia Bank, N.A.*, 370 S.C. 5, 20, 633 S.E.2d 722, 730 (2006). However, "[a]n order is not final until it is entered by the clerk of court; and until the order or judgment is entered by the clerk of court, the [court] retains control of the case." *Upchurch v. Upchurch*, 367 S.C. 16, 22, 624 S.E.2d 643, 646 (2006). Because the family court had not filed its original order, it retained jurisdiction to substitute an amended final order and decree and did not err in doing so.

### CONCLUSION

In summary, the family court's determination that the annuity fund constituted marital property, and the valuation of the annuity fund are affirmed. Similarly, the family court did not err in substituting an amended order for its original final order and decree. However, we reverse the family court's division of the marital estate and find that seventy percent of the marital estate shall be awarded to Husband and thirty percent to Wife. In addition, the issues of alimony and attorney's fees are reversed and remanded for further proceedings consistent with this opinion.

419

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

WILLIAMS and GEATHERS, JJ., concur.