**EPIFANIO BERRIOS-RODRIGUEZ, Appellant/Defendant**
**v.**
**MARIA BERRIOS, Appellee/Plaintiff**

S. Ct. Civil No. 2012-0090

Supreme Court of the Virgin Islands

June 18, 2013

EMILE A. HENDERSON, III, ESQ., Law Offices of Yvette D. Ross-Edwards, St. Croix, USVI, *Attorney for Appellant.*

LYDIA D. LOGIE-MOOLENAAR, ESQ., Law Office of Lydia Logie-Moolenaar, St. Croix, USVI, SAMUEL A. WALKER, ESQ., CPLS, P.A., Orlando, FL, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(June 18, 2013)

HODGE, *Chief Justice.* Appellant Epifanio Berrios-Rodriguez appeals from the Superior Court's August 9, 2012 Order, which required him to pay $1,300.00 in alimony to his former wife, Maria Berrios, every month through August 1, 2017. He also appeals from an earlier April 2, 2012 Order, which held that Berrios was entitled to alimony. For the reasons that follow, we reverse both orders as they relate to alimony and remand the case to the Superior Court for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 2011, Berrios initiated an action for divorce from Berrios-Rodriguez. Shortly thereafter, Berrios filed a motion for interim support, which the Superior Court granted in a November 8, 2011 Order. At the time, Berrios-Rodriguez had been employed by Wyatt V.I., a subcontractor providing support services at the HOVENSA oil refinery on St. Croix. The Superior Court held a hearing on February 13, 2012, where it heard testimony from both parties. During the hearing, Berrios-Rodriguez testified that he would lose his job on April 24, 2012, because Wyatt and other contractors would cease operations due to the closure of the HOVENSA refinery. In an April 2, 2012 Order, the Superior Court granted the divorce petition and adopted the terms of a partial settlement agreement the parties had negotiated during mediation. It also held that Berrios should receive alimony, but found that it could not determine Berrios-Rodriguez's ability to pay after April 24, 2012. As a result of this

inability, the Superior Court continued its interim order, and stated that it would revisit the alimony issue at a later hearing.

The Superior Court held its second hearing on July 13, 2012, where it again heard testimony from both parties. During the hearing, Berrios-Rodriguez testified that he had secured a 90-day contract with another subcontractor to perform maintenance work inside the HOVENSA refinery — albeit at lower pay — that would expire on August 4, 2012, and that he received $20,000.00 in severance pay from Wyatt. Notwithstanding the temporary nature of Berrios-Rodriguez's employment, the Superior Court, in its August 9, 2012 Order, directed him to make installment alimony payments in the amount of $1,300.00 per month through August 1, 2017. Berrios-Rodriguez timely filed his notice of appeal on September 7, 2012.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). Since the Superior Court's August 9, 2012 Order resolved the last outstanding claim between the parties, this Court possesses jurisdiction over this appeal. *See, e.g., Etienne v. Etienne*, 56 V.I. 686, 691 (V.I. 2012).

Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while the Superior Court's factual findings are only reviewed for clear error. *See St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Because "an alimony determination is a fact-intensive inquiry," this Court reviews an alimony determination solely for abuse of discretion, unless the Superior Court based its alimony award on a misapplication of the law or a clearly erroneous factual finding. *See Harvey v. Christopher*, 55 V.I. 565, 577 (V.I. 2011).

### B. Legal Standard for Alimony Determinations

On appeal, Berrios-Rodriguez contends that the Superior Court erred when it determined that Berrios was entitled to receive alimony, and, in the alternative, that it abused its discretion in setting the exact amount of alimony. In her brief, Berrios contends that the Superior Court properly

480

weighed the evidence, and further emphasizes the deferential nature of abuse of discretion review. Both parties rely on a six-factor test first articulated by the United States Court of Appeals for the Third Circuit in *Burch v. Burch*, 195 F.2d 799, 2 V.I. 559 (3d Cir. 1952), and later expanded upon in *Poe v. Poe*, 409 F.2d 40, 7 V.I. 30 (3d Cir. 1969), which Berrios states represents "well settled" law in this jurisdiction. (Appellee's Br. 5.) In *Burch*, the Third Circuit stated generally that "[w]hether an award of alimony shall be made, as well as the amount to be awarded, is within the discretion of the court, having regard to the conduct of both parties, the amount of property of each and all the other circumstances of the case." 195 F.2d at 812. Nearly two decades later in *Poe*, the Third Circuit refined the test by explaining that

> It is the circumstances surrounding the parties, the wife's necessities and the husband's financial ability, the physical condition of the parties, the nature of their life together, and in these modern times the wife's independence and ability to earn her own way, which must all be considered by the court in the exercise of its discretion in awarding or denying alimony.

409 F.2d at 43.

■ Unquestionably, the legal standard for alimony, as articulated in *Burch* and *Poe*, has become widely accepted in this jurisdiction. *See, e.g., Coman v. Coman*, 492 F.2d 273, 278, 11 V.I. 143 (3d Cir. 1974); *Grey v. Grey*, 50 V.I. 803, 805-06 (D.V.I. App. Div. 2008); *Armstrong v. Armstrong*, 266 F. Supp. 2d 385, 397 (D.V.I. App. Div. 2003); *Feddersen v. Feddersen*, 68 F. Supp. 2d 585, 595, 41 V.I. 230 (D.V.I. App. Div. 1999); *Paiewonsky v. Paiewonsky*, 50 F.R.D. 379, 380, 8 V.I. 62 (D.V.I. 1970). And, absent a different interpretation by this Court, the Superior Court is required to follow the Third Circuit's and Appellate Division's prior interpretations of local law. *Najawicz v. People*, S. Ct. Crim. No. 2012-0109, 2013 V.I. Supreme LEXIS 12, *19 (V.I. Mar. 15, 2013).

■ ■ Having reviewed all pertinent authorities, we conclude that continued reliance on *Burch* and *Poe* in awarding alimony in this jurisdiction is misplaced. Section 109 of title 16 of the Virgin Islands Code, which authorizes the Superior Court to award alimony in a divorce case, simply provides that

[w]henever a marriage is declared void or dissolved the court may, without regard to any determination that the breakdown of the marriage was the fault of one party or the other, further decree . . . for the recovery for a party determined to be in need thereof an amount of money in gross or in installments, as may be necessary for the support and maintenance of such party.

16 V.I.C. § 109(a)(3). The Legislature enacted this version of section 109 on April 24, 1973 — approximately four years after *Poe* and 21 years after *Burch. See* Act No. 3418, § 3 (V.I. Reg. Sess. 1973). When the Third Circuit issued the *Poe* and *Burch* decisions, the former section 109(a)(3) had authorized "the recovery *from the party in fault* such an amount of money, in gross or in installments, as may be just and proper for such party to contribute to the maintenance of the other" (emphasis added); *see also Burch,* 195 F.2d at 802 n.2 (quoting V.I. Divorce Law § 12 (1944)). In other words, "[s]ince the 1973 amendment of 16 V.I.C. § 109, the law of alimony has shifted from a fault-based system to a more contemporary need-of-the-spouse scheme, effectively rendering the amended 16 V.I.C. § 109 a need-based rule." *Hamilton v. Hamilton,* 38 V.I. 3, 7 (V.I. Super. Ct. 1996); *see also Armstrong,* 266 F. Supp. 2d at 397 (citing *Hamilton,* 38 V.I. at 8).

Upon reviewing the pertinent language of the *Burch* decision, it is clear that the "conduct of the parties" and the "circumstances of the case" refer to the former fault requirement:

It will be observed that under this statute alimony may only be recovered from the "party in fault" in a divorce suit in which a divorce decree is granted. Is the plaintiff a "party in fault" in the present suit within the meaning of [the statute]? It can certainly be said that he is the party at fault in the defendant's counterclaim since we have held that the defendant is entitled to a divorce under the counterclaim by reason of the plaintiff's cruelty. But we think that the phrase "party in fault" as used in [the statute] is intended to refer compendiously not merely to parties whose overt acts constitute grounds for divorce but also to any party whose disability or defect of body, mind or temperament may have deprived the other party of the opportunity of enjoying a normal marital relationship. In this sense the plaintiff is a party at fault in his own suit for divorce on the ground of incompatibility. For, as we have already pointed out, incompatibility of temperament necessarily involves both parties so that in a very real sense the incom-

patible temperament of each party has deprived the other of a normal martial relationship. This means, of course, that in this same sense the defendant was also at fault in the plaintiff's suit brought on the ground of incompatibility. Under the circumstances we conclude that both parties were at fault within the meaning of [the statute].

> This, however, does not necessarily preclude the defendant from receiving an award of alimony from the plaintiff. On the contrary[,] ... the Divorce Law vests in the District Court full power to require a party at fault to contribute to the maintenance of the other party, if it is just, equitable and in the public interest to do so, even though the other party be also somewhat at fault. Whether an award of alimony shall be made, as well as the amount to be awarded, is within the discretion of the court, having regard to the conduct of both parties, the amount of property of each and all the other circumstances of the case.

195 F.2d at 811-12. Likewise, the *Poe* decision's emphasis on the importance of the "physical condition of the parties" and the "nature of their life together" also relates to the fault element, since *Poe* cites to and endorses the portion of *Burch* holding that a party's physical, mental, or social disability constitutes "fault" under the former section 109(3) if it "deprived the other party of the opportunity to enjoy a normal marital relationship." *See Poe*, 409 F.2d at 42-43; *Burch*, 195 F.2d at 811-12.

While these decisions may have correctly interpreted former section 109(a)(3), we do not believe a literal recitation of the *Poe* factors is appropriate in light of the 1973 amendment explicitly eliminating fault as a consideration. Although this Court has held that the Superior Court is bound to follow the Third Circuit's prior interpretations of local law issued during the period in which it served as the *de facto* court of last resort for the Virgin Islands, *see Najawicz*, 2013 V.I. Supreme LEXIS 12, *18, the *Poe* and *Burch* courts did not — and could not — interpret the 1973 amendments to section 109. *See Anderson v. Anderson*, No. M2005-02029-COA-R3-CV, 2007 Tenn. App. LEXIS 175 (Tenn. Ct. App. Mar. 29, 2007) (acknowledging that subsequent amendments to Tennessee alimony statute superseded prior Tennessee Supreme Court precedent regarding certain types of alimony awards). Consequently, the Superior Court committed error to the extent it felt obligated to follow Third Circuit decisions interpreting former section 109 notwithstanding the 1973 amendments.

We recognize, of course, that *Armstrong*, *Feddersen*, and similar decisions explicitly recognized the 1973 amendments, yet nevertheless quoted the *Poe* factors, apparently believing that they remained general enough to guide the Superior Court in the exercise of its discretion under the amended section 109. Thus, the Superior Court may have followed *Poe* because it believed binding precedent from the Appellate Division authorized application of the *Poe* factors notwithstanding the 1973 amendments. But although we agree that some of the *Poe* factors do not necessarily relate to fault and could properly be considered, we believe the approach endorsed by these cases is nonetheless problematic.

To illustrate the danger of continued blind citation to the *Poe* factors, we need to look no further than the case before us. At the initial alimony hearing, Berrios's counsel asked her client on direct examination about what led to the separation, which caused Berrios to testify that her husband had been "in a bar" and "drunk" when she called him from Puerto Rico after her cousin died. (J.A. 27.) When Berrios-Rodriguez's counsel interrupted the testimony by objecting and moving to strike on the grounds that fault is irrelevant to an alimony determination, the Superior Court overruled the objection because "we can find . . . in *Poe*, one of the factors that the Court is permitted to consider is the quality of the parties' life together." (J.A. 29.) Afterwards, Berrios continued by stating that when she told Berrios-Rodriguez that her cousin died, "he told me to bury him and stay with my man over there." (J.A. 31.) As a result of further questioning on direct examination, Berrios recounted additional instances of her husband's drinking and the problems in their marriage, and the Superior Court overruled Berrios-Rodriguez's second objection, stated that it "will generally permit . . . inquiry into this area since the quality of the parties' life together is one of the areas that the Court is permitted to [consider]," and then, after advising the parties that it looked up the *Poe* citation on the bench, "remind[ed] the parties that the test . . . . is the circumstances surrounding the parties," including "the nature of their life together." (J.A. 34.) Although the Superior Court is correct that *Poe* authorizes such questioning, the Legislature's subsequent amendment to section 109 statutorily overruled this portion of that decision. *See Anderson*, 2007 Tenn. App. LEXIS 175, \*2. Yet the continued reliance on the outdated decision caused the Superior Court to allow testimony in this case wholly irrelevant to the question of alimony.

We believe the better approach is simply to apply the specific guidance provided by the Legislature. The statute authorizing alimony provides that "a party determined to be in need" may receive, from the other party, "money in gross or in installments, as may be necessary for the support and maintenance of such party." 16 V.I.C. § 109(a)(3). Although section 109(a)(3) does not define these terms, chapter 13 of title 16 — which governs support payments generally, and explicitly encompasses alimony[1] — provides that an alimony award shall "include all that is indispensable for maintenance, housing, clothing and medical attention according to the social and economic position of the family," 16 V.I.C. § 341(g), and "[t]he amount provided . . . shall be proportioned to the resources of the person giving such support and to the necessities of the party receiving it, and shall be reduced or increased in proportion to the resources or the necessities of the latter." 16 V.I.C. § 345(a).

■ In light of these provisions, we reformulate the test for an alimony award as follows. First, the Superior Court should consider all factors to determine if the parties will be similarly situated after their divorce. If this general comparability of resources and capacity is shown, then that should be the end of the matter. But if the divorce causes an economic disparity between the former spouses, the Superior Court should fix a gross or installment alimony award that strikes the appropriate balance between the party in need of support, as defined by section 341(g), and the other party's ability to pay. In applying this test, we emphasize that the Superior Court should not simply look at the parties' current finances, but may consider their potential for future earnings based on their educational background, employment history, and other relevant factors.[2] Likewise,

---

[1] For purposes of chapter 13 of title 16, the terms " 'support', 'support order' or 'support payments' means any amount that the court . . . may require a person to pay under a temporary order or a final judgment, order or decree, and may include alimony. . . ." 16 V.I.C. § 341(g).

[2] Although we depart from *Poe* and *Burch* due to the subsequent amendment to section 109, our reformulated standard should not be construed as completely rejecting consideration of these factors in their entirety. For example, a party's physical condition, while analyzed in *Burch* in the context of the former fault element, is nonetheless relevant to determining both a party's need — to the extent the disability results in increased medical or other expenses — and, to the extent it impacts employability, a party's ability to pay. Similarly, the nature of the parties' lives together — although improperly invoked by the Superior Court in this case to permit Berrios to disparage her former husband during the alimony hearing — can be relevant to the extent necessary to ascertain "the social and economic position of the family." 16 V.I.C. § 341(g). While this Court, in lieu of setting forth a new standard, could clarify each

while the Superior Court must base an alimony award "according to the social and economic position of the family," 16 V.I.C. § 341(g), it must remain mindful that "[i]t is a reality of divorce that economic difficulty often ensues for both parties because the same income cannot support two households to the same standard of living as one household was able to enjoy." *Anderson*, 2007 Tenn. App. LEXIS 175 at *22. And given the fact-intensive nature of this inquiry, the Superior Court will clearly be afforded a great deal of discretion with respect to its ultimate determination. *Harvey*, 55 V.I. at 577.

## C. The Alimony Award

Having ascertained the appropriate legal standard for an alimony award, we must now determine whether the Superior Court abused its discretion. In his appellate brief, Berrios-Rodriguez primarily argues that the Superior Court granted alimony without taking into account both parties' relative financial situation.[3] In particular, he emphasizes that the $20,000.00 he received from Wyatt was a one-time severance payment, and that the Superior Court appeared to assume, without making the

---

of the *Poe* factors, in such a manner, we decline to do so because the Legislature, in adopting sections 109(a), 341(g), and 345(a), unquestionably intended to both codify a purely need-based rule, and to have each case rest on its own facts and circumstances. We conclude that the standard set forth above, directing the Superior Court to base its decision on the parties' needs and means, is the most straightforward method for effectuating the Legislature's intent.

[3] Berrios-Rodriguez also challenges the Superior Court's alimony ruling on several other grounds, all of which are wholly unsupported by the record. For example, Berrios-Rodriguez repeatedly emphasizes in his brief that Berrios failed to introduce admissible evidence that she was unable to work due to her medical condition, but the Superior Court, in its August 9, 2012 Order, never made an express finding that Berrios was physically unable to work — rather, it found that her opportunity to find employment was limited by her lack of education, formal training, and work experience. (J.A. 9.) Likewise, although Berrios-Rodriguez claims the Superior Court ignored that Berrios does not pay rent and that her son does not contribute towards expenses, the Superior Court explicitly found "[t]hat the parties' adult son is unemployed and contributes nothing to the household's expenses," and "that the parties' adult son should contribute to the expenses allotted for food and utilities," but "[t]hat even if the parties' adult son was employed and able to pay one half of the water, utility, and food bill . . . Berrios would still be unable to meet her monthly expenses." (J.A. 10-11.) Since the Superior Court found Berrios's monthly expenses to total $1,749.00, representing "$165.00 for utilities, $165.00 for water, $500.00 for food, $199.00 for cellular phone services, $150.00 for medications, $110.00 for gas, $140.00 for clothing, $50.00 for personal hygiene supplies, $220.00 for doctor visits, and $600.00 per year for auto insurance," (J.A. 10), it is clear that the Superior Court recognized that Berrios does not pay rent and, by fixing alimony at $1,300.00, accounted for the adult son's presence in her home.

appropriate factual findings, that he would maintain comparable employment despite the fact that his contract expired on August 4, 2012. We agree.

■ As a threshold matter, we note that the Superior Court's April 2, 2012 Order stated "[t]hat no evidence was introduced establishing [Berrios-Rodriguez]'s ability to pay after April 24, 2012," yet simultaneously found that "Berrios is entitled to alimony." (J.A. 3-4.) As explained above, a court should award alimony if and only if divorce results in a disparity between the spouses. We recognize that the Superior Court did not have the benefit of our reformulated standard when it rendered its decision in this case. However, the Superior Court's approach — awarding alimony based solely on Berrios's need without considering Berrios-Rodriguez's financial ability — was also wholly inconsistent even under the *Poe* approach:

> It is the circumstances surrounding the parties, the wife's necessities and the husband's financial ability, the physical condition of the parties, the nature of their life together, and in these modern times the wife's independence and ability to earn her own way, *which must all be considered by the court in the exercise of its discretion in awarding or denying alimony.*

409 F.2d at 43 (emphasis added).

Of course, since the Superior Court's August 9, 2012 Order also found that Berrios was entitled to alimony, its prior error could potentially be harmless. We are not fully convinced that this is the case, since the Superior Court restricted the evidence that the parties could introduce at the July 13, 2012 hearing because it "already decided this woman is going to get alimony" and therefore "what we need to do at this point is focus on how much." (J.A. 164.) However, even if we were to assume, without deciding, that the subsequent August 9, 2012 Order cured the error in the April 2, 2012 Order, we agree with Berrios-Rodriguez that the Superior Court abused its discretion with respect to that later order as well.

In its August 9, 2012 Order, the Superior Court explicitly found that Berrios-Rodriguez "continues to do maintenance work inside the HOVENSA refinery on a ninety (90) day contract with a subcontractor," and that "[s]aid contract expires on August 4, 2012, and [he] does not know if he will get another ninety (90) day contract." (J.A. 9.) The

Superior Court further found that "said job pays $22.00 per hour and that [he] takes home approximately $900.00 per week," and that he "also received severance pay in the amount of $20,000.00 from his former employer." (*Id.*) Yet despite making these factual findings, the Superior Court ordered him to pay $1,300.00 in monthly alimony until August 1, 2017.

 █ We do not mean to imply that Berrios-Rodriguez's uncertain employment situation, without more, necessarily precludes the installment alimony ordered by the Superior Court. We agree with the numerous jurisdictions that have held that, in determining whether to award alimony, a trial court may properly impute additional income to a spouse that it finds is unemployed or underemployed, either voluntarily or due to a lack of diligence or effort. *See, e.g., Rabbath v. Farid*, 4 So.3d 778, 781-82 (Fla. Ct. App. 2009); *Crossland v. Crossland*, 397 S.C. 406, 725 S.E.2d 509, 513-14 (S.C. Ct. App. 2012); *Byrd v. Byrd*, 184 S.W.3d 686, 691 (Tenn. Ct. App. 2005), *Dobson v. Dobson*, 2012 UT App 373, 294 P.3d 591, 597-98 (Utah Ct. App. 2012). But the August 9, 2012 Order does not make any factual findings as to Berrios-Rodriguez's education and skills — even though such findings are made with respect to Berrios[4] — or his ability to obtain comparable employment in the event his contract was not renewed.[5] Thus, while the Superior Court was not required to yet again defer a final decision on alimony, and could have permissibly awarded installment alimony despite Berrios-Rodriguez's uncertain employment situation — such as by determining, based on the evidence in the record, whether his contract would likely be renewed, or ascertaining his likelihood of obtaining substitute employment — it erred to the extent it failed to make any findings as to his potential future earnings.

_____

[4] The failure of the Superior Court to make any findings as to Berrios-Rodriguez's education, skills, and ability to earn comparable employment may itself be a consequence of following *Poe*, which requires courts to consider "the wife's independence and ability to earn her own way" even though sections 109(3) and 341 use gender neutral language.

[5] In her appellate brief, Berrios states that the Superior Court "specifically made reference to the required factors, both in open court[ ] and in its written findings of fact and conclusions of law." (Appellee's Br. 8.) However, Berrios cites to no portion of the record where the Superior Court makes any findings with respect to the pivotal issue of whether Berrios-Rodriguez possesses the skills and education necessary to obtain comparable employment after expiration of his temporary contract on August 4, 2012, so as to justify a $1,300.00 a month alimony award for the next five years.

Since the Superior Court found that Berrios-Rodriguez's employment expired on August 4, 2012, yet ordered him to pay $1,300.00 in monthly alimony for five years without making any additional findings about his ability to pay, it is exceedingly difficult for us to review its decision. We recognize, however, that the Superior Court may have implicitly found that Berrios-Rodriguez possessed the capacity to earn comparable income even if his contract was not actually renewed. Although the Superior Court explicitly found that Berrios's ability to work was "severely limit[ed]," in part, by "the current economic crisis on the island of St.. Croix," (J.A. 9), it made no such finding as to Berrios-Rodriguez. Some of the Superior Court's remarks at the second alimony hearing may support an inference that the Superior Court believed that Berrios-Rodriguez was less affected by economic conditions than Berrios. The Superior Court stated that "it's also been on the news that various other companies have come to HOVENSA, and there's subcontractors that have interviewed persons for jobs elsewhere," (J.A. 196), and that "it's been in the news, and the Department of Labor is constantly talking about the fact that they've offered retraining and other opportunities to all of the affected workers, not just those from HOVENSA but those from the subcontractors," (J.A. 197), and that "[a senator] brought in a group as well to come to the refinery and they were taking applications of — at some national trade people association." (J.A. 198.) It also repeatedly asked Berrios-Rodriguez if he had taken advantage of these opportunities, and each time he testified that he was not aware of them. (J.A. 196-98.)

The Superior Court committed error to the extent it relied on its own independent recollection of media accounts of the opportunities provided to workers affected by HOVENSA's closure as a basis for rejecting Berrios-Rodriguez's testimony. We have previously held that Virgin Islands courts may not properly consider newspaper articles and other materials that have not been made part of the record. *See generally In re People of the V.I.*, 51 V.I. 374, 389-91 (V.I. 2009). Although judges may take judicial notice of catastrophic economic conditions affecting a particular geographic area or locality, *see, e.g., Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 249, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978), the specific efforts that other companies, trade associations, or the local government have taken to assist displaced HOVENSA workers generally — let alone Berrios-Rodriguez specifically — do not constitute "general knowledge that cannot be reasonably questioned or disputed."

*Farrell v. People*, 54 V.I. 600, 615-16 (V.I. 2011) (citing FED. R. EVID. 201). *See also Wilson v. Califano*, 617 F.2d 1050, 1054 (4th Cir. 1980) ("[I]t is manifestly unfair for the [judge] to rely on assumptions and 'facts' which the claimant cannot, without reading the [judge]'s mind, test or rebut.").[6]

██ ██ Finally, we recognize, since his contract expired on August 4, 2012, and the Superior Court did not issue its decision until August 9, 2012, that Berrios-Rodriguez could have submitted new evidence to the Superior Court, through affidavit or otherwise, relating to his employment status. We do not believe, however, that Berrios-Rodriguez was required to take this action. It is well established that — as in ordinary civil litigation — the party that asserts a cause of action for alimony bears the burden of proof. As the party seeking an alimony award, Berrios bore the burden of proving all elements of her claim for alimony, including establishing Berrios-Rodriguez's ability to pay based on his severance payment, wages from his current contract, and other actual or potential sources of income. *See James v. James*, 24 V.I. 122, 126 (D.V.I. App. Div. 1988) ("[I]t was the wife's burden to prove her . . . need for alimony."); *Demont v. Demont*, 67 So.3d 1096, 1101 (Fla. Ct. App. 2011) ("As the party seeking alimony, the wife had the burden to prove . . . the husband's ability to pay."). *See also* 5 V.I.C. § 740(5) ("In civil cases the affirmative of the issue shall be proved. . . ."); *cf. In re Suspension of Welcome*, S. Ct. Civ. No. 2012-0094, 2013 V.I. Supreme LEXIS 6, *20 (V.I. Feb. 26, 2013) (party seeking divorce bears burden of establishing elements of divorce). Importantly, installment alimony is not the only option available to Berrios; to the extent Berrios could not sufficiently prove Berrios-Rodriguez's ability to pay over a five year period, she could have sought a lump sum alimony award based on his current ability to pay. And while section 110 of title 16 permits Berrios-Rodriguez to file a motion to modify the installment alimony award at any time, requiring him to do so would also shift the burden of proof, in that in such a proceeding he would

---

[6] Moreover, as explained above, the Superior Court, relying on *Poe*, permitted Berrios to testify to the events that led to the breakdown of their marriage, including Berrios-Rodriguez's allegedly excessive drinking. Since the Superior Court failed to make any explicit factual findings as to why it concluded Berrios-Rodriguez should pay $1,300.00 per month in alimony for five years despite his employment contract expiring on August 4, 2012, we cannot know if it relied on this portion of Berrios's testimony. However, to the extent this testimony influenced any aspect of its alimony decision, the Superior Court committed error.

be required to prove that the judgment should be altered. *See, e.g., In re Canaway*, 161 N.H. 286, 13 A.3d 320, 324-25 (2010); *Miller v. Miller*, 160 N.J. 408, 734 A.2d 752, 758 (1999).

Since the uncontradicted evidence in the record established that Berrios-Rodriguez's contract would expire on August 4, 2012, and had not been renewed, the Superior Court should have determined Berrios-Rodriguez's ability to pay based on his $20,000.00 severance and other known assets, and — if and only if supported by competent, admissible evidence — any imputed income resulting from a finding of willful unemployment or a bad faith or neglectful job search. Accordingly, we reverse the alimony award and remand for further proceedings.[7]

### III. CONCLUSION

For the foregoing reasons, we reverse the August 9, 2012 Order in its entirety, as well as the portion of the April 2, 2012 Order holding that Berrios is entitled to alimony. We remand the case to the Superior Court so that it may make a proper alimony determination consistent with this Opinion, which may necessitate holding a new hearing.

---

[7] Although we reverse the alimony award because the Superior Court failed to give proper consideration to Berrios-Rodriguez's ability to pay, we encourage the Superior Court to carefully consider whether any other findings may warrant additional examination in light of our refined legal standard for alimony determinations. For example, the August 9, 2012 Order does not address whether all of Berrios's claimed monthly expenses are "indispensable for maintenance, housing, clothing and medical attention according to the social and economic position of the family." 16 V.I.C. § 341(g). In fact, the Superior Court did not make any explicit factual findings with respect to the parties' social and economic position prior to their divorce.