**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | | |
|---|---|---|
| **STEPHEN EVANS-FREKE,** | ) | **S. Ct. Civ. No. 2022-0046** |
| Appellant/Petitioner, | ) | Re: Super. Ct. Cs. No. 166/2016 (STT) |
| | ) | |
| v. | ) | |
| | ) | |
| **VALERIE EVANS-FREKE,** | ) | |
| Appellee/Respondent. | ) | |
| | ) | |
| | ) | |

On Appeal from the Superior Court of the Virgin Islands
District of St. Thomas/St. John
Superior Court Judge: Hon. Debra S. Watlington

Argued: June 13, 2023
Filed: October 13. 2023

Cite as 2023 VI 12

BEFORE: **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice, and **IVE ARLINGTON SWAN**, Associate Justice.

ATTORNEYS:

**Andrew L. Capdeville, Esq. (argued)**
Law Offices of Andrew L. Capdeville P.C.
St. Thomas, U.S.V.I.

**Justin K. Holcombe, Esq.**
Dudley Newman Feuerzeig, LLP
St. Thomas, U.S.V.I.
    *Attorneys for Appellant,*

**Julie German Evert, Esq. (argued)**
Law Offices of Julie German Evert
St. Thomas, U.S.V.I.

**Laura C. Nagi, Esq.**
Laura Castillo Nagi, Attorney & Counselor at Law, PLLC
St. Thomas, U.S.V.I.
    *Attorneys for Appellee.*

# OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1　Appellant Stephen Evans-Freke appeals from the Superior Court's August 23, 2022 order, which directed Stephen to pay his former spouse Valerie *pendente lite* support in the form of $7,500 in cash monthly, $5,000 credit card access per month with unused funds to rollover to the next month amounting to no more than $60,000 per year, and a one-time sum of $350,000 for legal expenses as Valerie's counsel determines. For the reasons that follow, we reverse the Superior Court's August 23, 2022 order and remand the case to the Superior Court so that it may promptly deal with the only issue remaining in this case—the distribution of marital property.

## I.　BACKGROUND

¶ 2　The parties met in 1984 when Valerie was 29 years old.[1] At that time, Valerie was working as a model, but stopped working in 1989 and has not worked since then. The parties were married on December 27, 1990 in Norfolk, Connecticut. They had two children, both of whom are now adults. In 1999, the parties purchased a 37-acre estate in Tuxedo Park, New York, which remains Valerie's residence to date. They acquired several other properties during the time they were married. Stephen provided for Valerie throughout the marriage and has always managed the finances. In 2008, Stephen moved to the U.S. Virgin Islands to form businesses, at which time he began renting a home in St. Thomas, while Valerie remained in New York. Stephen has resided in the Virgin Islands since moving to St. Thomas in 2008 and has continued to be Valerie's only source of financial support.

---

[1] Because both parties possess the same last name, they are herein referred to by their first names to minimize confusion.

¶ 3      On November 14, 2016, Stephen filed a petition for divorce in the Virgin Islands Superior Court seeking dissolution of his marriage to Valerie.  While Stephen's petition was pending, Valerie filed a separate petition for divorce in New York on February 17, 2017.  However, on February 21, 2017, Valerie also filed an answer to the divorce petition Stephen filed with the Virgin Islands Superior Court, which admitted the irreconcilable breakdown of the marriage, but asserted lack of personal jurisdiction and *forum non conveniens* as affirmative defenses.  Valerie did not request any affirmative relief from the Superior Court in her answer, such as a request for an alimony award, nor did she move for an order of *pendente lite* support in accordance with section 108, title 16 of the Virgin Islands Code.

¶ 4      The New York court dismissed Valerie's divorce petition on *forum non conveniens* grounds, finding that the Virgin Islands was a more appropriate forum.  The Superior Court of the Virgin Islands later dismissed Stephen's petition, finding that it did not have personal jurisdiction over Valerie.  On appeal, this Court determined that the Superior Court erred in its dismissal and ordered the Superior Court to assume jurisdiction, immediately enter a decree of divorce, and exercise jurisdiction over all outstanding issues that remained between the parties.  *Evans-Freke v. Evans-Freke*, 75 V.I. 407, 423 (V.I. 2021).

¶ 5      The Superior Court ultimately issued a divorce decree on February 14, 2022.  In its divorce decree, the Superior Court dissolved the marriage between Stephen and Valerie, and stated that it would defer distribution of the parties' jointly-owned real and personal property for a later determination.  In the findings of fact and conclusions of law accompanying the February 14, 2022 divorce decree, the Superior Court further found that "[t]he parties have neither waived nor asserted their right to alimony."  (J.A. 39.)

¶ 6     On March 11, 2022, Valerie filed an emergency motion for *pendente lite* support, payment of expert forensic accountant fees and costs, and attorney's fees and costs *pendente lite*. The Superior Court held an emergency hearing on the motion on June 2 and June 3, 2022. The Superior Court heard testimony from Valerie, Stephen, Daniella Kauffman—the comptroller for Auven Therapeutics Management Company, Stephen's primary company in the Virgin Islands, and Gregory Cowhey—Valerie's expert forensic accountant witness. The parties submitted various exhibits including Stephen's financial affidavits, Valerie's financial affidavit (testified to at the hearing but not included in the record), and photographs of repairs needed for the Tuxedo Park home.

¶ 7     At the emergency motion hearing, Valerie testified to having savings in the approximate amount of $176,300; however, her only source of income was the $5,000 cash paid to her monthly by Stephen and access to $5,000 per month on his American Express credit account. Stephen also paid for Valerie's household expenses including mortgage payments, utility fees, electricity, social club membership, cell phone expenses, and home entertainment allowance, among other things. Valerie testified that her monthly expenses included food, gas, entertainment, monthly tolls, parking, dry cleaning, and travel, asserting that her monthly expenses were upwards of $26,217.

¶ 8     Stephen testified that his current net worth, as of March 31, 2022, was approximately $25 million and that he earns between $50,000 to $70,000 from his companies' monthly distributions, which income he uses to support his three sons, two of whom are adults,[2] and Valerie. Stephen currently lives in a five-bedroom house located in Estate Nazareth, St. Thomas, Virgin Islands,

---

[2] Stephen explained that he supports one of his adult sons because of his health issues which Stephen covers as needed, and to the other son Stephen gives over $100,000 annually to help him with his two startup companies.

with his current wife, and the monthly rent is $12,000. Stephen testified that he is currently in the midst of financial hardship due to his Virgin Islands company, Auven Therapeutics, being in breach of its loan covenant and the fact that most of his wealth is in assets which are not currently liquid. He stated that he is struggling to pay his bills which include $35,000-$40,000 monthly in support to Valerie, an additional $40,000 monthly in support to his children, approximately $18,000 monthly towards his personal living expenses in St. Thomas, and the payroll for all of his employees.

¶ 9     Valerie's expert witness, Gregory Cowhey with the firm RSM US LLP, testified at the emergency motion hearing as an expert forensic accountant. He also submitted an affidavit to the Superior Court declaring that after a review of Stephen's tax returns, he found several inconsistencies. Cowhey asserted that Stephen's tax returns from 2020 show an income of millions of dollars and that over the last five years, Stephen's after-tax annual income was approximately $5.75 million.

¶ 10     On August 22, 2022, the Superior Court entered an order directing Stephen to pay Valerie $7,500 cash per month and to provide $5,000 credit card access per month with unused funds to rollover to the next month amounting to no more than $60,000 per year. It also ordered Stephen to pay a one-time sum of $350,000 for legal expenses, to be expended as Valerie's counsel determines. Stephen timely filed a notice of appeal with this Court on August 28, 2022. *See* V.I. R. APP. P. 5(a)(1).

## II.     DISCUSSION

### A. Appellate Jurisdiction

¶ 11     Prior to considering the merits of an appeal, this Court must first determine whether it has appellate jurisdiction over the matter. *V.I. Gov' t Hosps. & Health Facilities Corp. v. Gov't of the*

*V.I.*, 50 V.I. 276, 279 (V.I. 2008).  This Court typically possesses jurisdiction only over "appeals arising from final judgments, final decrees or final orders of the Superior Court."  4 V.I.C. § 32(a); 48 U.S.C. § 1613a(d).  Section 32(a) embodies the final judgment rule, which generally requires parties to "raise all claims of error in a single appeal following final judgment on the merits." *Enrietto v. Rogers Townsend & Thomas PC*, 49 V.I. 311, 315 (V.I. 2007).

¶ 12    In her appellate brief, Valerie asserts that this Court lacks jurisdiction to hear this appeal because the Superior Court's August 23, 2022 order is not a final judgment.  According to Valerie, the August 23, 2022 order awarded *pendente lite* support pursuant to section 108, title 16 of the Virgin Islands Code, and thus does not constitute an appealable final judgment because section 108 identifies such orders as "interlocutory."  Valerie also insists that the underlying divorce proceeding has not been concluded since the Superior Court has not yet issued an order distributing the parties' marital assets.  Stephen, however, contends that this Court possesses jurisdiction over this appeal on grounds that the August 23, 2022 order constitutes an appealable injunction pursuant to section 33(b)(1), title 4 of the Virgin Islands Code because the Superior Court provided Valerie with substantive relief in more than a temporary fashion.

¶ 13    Yet regardless of the parties' arguments for and against the existence of appellate jurisdiction, the determination of whether such jurisdiction does or does not exist—and on what basis—is ultimately one that belongs to this Court.  *See Williams v. People*, 58 V.I. 341, 346 n.4 (V.I. 2013) (citing *H&H Avionics, Inc. v. V.I. Port Auth.*, 52 V.I. 458, 460 (V.I. 2009)).  Importantly, this Court is not bound to consider only the arguments made by the parties because subject matter jurisdiction is an issue to which traditional concepts of waiver do not apply.  *See Ottley v. Estate of Bell*, 61 V.I. 480, 488 n.4 (V.I. 2014).

¶ 14    As a threshold matter, the Superior Court certainly entered at least one final judgment in this case.  As noted earlier, the Superior Court issued a divorce decree on February 14, 2022, which granted Stephen's petition, dissolved the parties' marriage, and retained jurisdiction only with respect to division of the parties' marital assets.  Pursuant to section 109, title 16 of the Virgin Islands Code, titled "Final Orders," a decree entered by the Superior Court which dissolves a marriage is a final order.  The reason for this is obvious:  orders that are non-final or interlocutory "remain[] open for reconsideration by the trial court," *Greene v. V.I. Water & Power Auth.*, 67 V.I. 727, 734 (V.I. 2017), while final orders are not subject to plenary reconsideration by the Superior Court but may only be modified "in certain specifically enumerated circumstances."  *In re Welcome*, 58 V.I. 236, 250 (V.I. 2013).  This remains the case even when a court issues a divorce decree but does not adjudicate all outstanding issues, such as child custody or—in this case— division of marital assets:

> When a court retains jurisdiction to consider requests for ancillary relief, following the entry of a divorce decree, each final ruling on a request for a specific type of ancillary relief is directly and separately appealable; all rulings that are made within the context of a particular ancillary proceeding are not necessarily final, however, and, therefore, are not necessarily appealable as a matter of right.

*Final Divorce Judgments, Generally*, 24 AM. JUR. 2D *Divorce and Separation* § 373 (collecting cases).  This is because Virgin Islands law—like the laws of most if not all United States jurisdictions—prohibits the parties to a divorce action from remarrying until the judgment dissolving the marriage is granted and "the action has been heard and determined on appeal" or the time to take such an appeal has expired.  *See* 16 V.I.C. § 111.  Thus, if a divorce decree were not a final judgment immediately appealable as of right, but instead an interlocutory order that does not become final until every single issue in the divorce proceeding is resolved, the parties are effectively precluded from remarrying, since any new marriage could become void if the Superior

Court, for whatever reason, chooses to vacate the divorce decree and undo the dissolution of the parties' marriage. *See State v. Hendricks*, 372 P.3d 437, 440 (Kan. Ct. App. 2016) (rejecting the argument that divorce decrees are not final if the court retains jurisdiction to address other issues, such as child custody, because such a holding "would cause highly negative, unintended consequences that would be a surprise to Kansas divorce practitioners and to most Kansans who have been divorced and remarried," since "standard decrees . . . would not constitute final judgments, making voidable the new marriages of previously divorced Kansans"). In fact, in the opinion adjudicating the prior appeal in this very case, this Court acknowledged that one of the benefits of the legal concept of divisible divorce—that is, the Superior Court ordering the dissolution of the marriage while retaining jurisdiction to resolve other issues at a future date—is permitting the parties to immediately remarry. *Evans-Freke*, 75 V.I. at 422 n.4. This would not be permitted under section 111, title 16 of the Virgin Islands Code unless the divisible divorce decree were a final judgment which could be immediately appealed as of right.

¶ 15    The question, then, is not whether a final judgment has been entered, since the February 14, 2022 divorce decree constituted a final judgment which neither party appealed to this Court. Rather, the issue is whether the August 23, 2022 order constitutes a *second* final judgment that is separately appealable in its own right.

¶ 16    In this case, both Stephen and Valerie appear to agree that the August 23, 2022 order is not a "final judgment[], final decree[] or final order[] of the Superior Court" within the meaning of section 32(a), title 4 of the Virgin Islands Code. Rather, they both brief the issue of jurisdiction on the premise that the Superior Court entered a *pendente lite* support order pursuant to section 108, title 16 of the Virgin Islands Code and that a *pendente lite* support order entered pursuant to section 108 is interlocutory and only immediately appealable pursuant to a recognized exception to the

final judgment rule, such as the allowance for appeals of orders granting, denying, or modifying injunctions. *See* 4 V.I.C. § 33(b)(1).

¶ 17    However, the parties' assumption that the August 23, 2022 order is an interlocutory order providing for *pendente lite* support under section 108 is mistaken. To be sure, the August 23, 2022 order is titled "Pendente Lite Order," states that it is granting Valerie's motion for *pendente lite* support, and cites section 108 as the basis for its power and authority to issue a temporary support order. Moreover, it is well-established that "pendente lite" is used to describe something that is effective "while the action is pending[; d]uring the proceedings or litigation." BLACK'S LAW DICTIONARY 1248 (9th ed. 2009); *see also* 1 V.I.C. § 42 (words and phrases that have "acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning"); *Greer v. People*, 74 V.I. 556, 580 (V.I. 2021) (same). Yet this Court has repeatedly held that "[t]he determination of whether a particular order is appealable rests on its content and substance, not its form or title." *Simpson v. Bd. of Dirs. of Sapphire Bay Condominiums West,* 62 V.I. 728, 730 (V.I. 2015) (quoting *In re People*, 51 V.I. 374, 383 (V.I. 2009)); *accord, Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 611-612 (V.I. 2012) ("[T]his Court has repeatedly held 'that the substance of a motion, and not its caption, shall determine under which rule that motion is construed.'"). In fact, this Court has recently held that the fact that the Superior Court expressly labels a child custody order as "interim" or "temporary" in a domestic relations case is not dispositive if the "order resembles—in every way other than the 'interim' designation—a complete resolution of the custody claims pending between the parties." *James v. O'Reilly*, 70 V.I. 990, 996 (V.I. 2019) (internal quotation marks and citations omitted).

¶ 18    To determine whether the August 23, 2022 order is, or is not, an interlocutory *pendente lite* support order, this Court must consider the plain text of the statute authorizing the Superior Court

to enter such an order. Section 108, title 16 of the Virgin Islands Code, titled "Interlocutory Orders," provides, in relevant part, that

> After the commencement of an action, **and before a judgment therein**, the court may, in its discretion, provide by order-
>> (1) that a party in need obtain from the other party such funds as may be necessary to enable the party in need to prosecute or defend the action, as the case may be;
>> . . . .
>> (3) for the freedom of the wife from the control of the husband during the pendency of the action and the court may restrain either or both parties from disposing of the property of either party pending the action.

(emphasis added). The clear purpose of subsections 108(1) and (3) is to implement the provisions of section 342, title 16 of the Virgin Islands Code, which provides that a "husband and wife" "are obliged to support each other," 16 V.I.C. § 342(a)(1), by ensuring that the spouse with greater means continues to provide necessary support to the spouse of lesser means for the period between commencement of the divorce action and entry of a judgment dissolving the marriage. This statutory framework is consistent with longstanding practices employed in other jurisdictions, which prohibit entry of a *pendente lite* order after the court has already dissolved the parties' marriage.[3] *See, e.g., Vinson v. Vinson*, 190 So. 454, 461 (Fla. 1939) ("[T]he only foundation for an order for alimony, suit money and counsel fees *pendente lite* is the continued existence of the

---

[3] Apparently recognizing this limitation, in Section II of his opposition to Valerie's motion for *pendente lite* support, Stephen argued to the Superior Court that section 108 does not allow for an award of *pendente lite* support or other funding after a judgment is entered. (J.A. 85-86.) The opposition specifically argued that "[t]he language of 16 V.I.C. § 108, which is the basis for Valerie's motion, is very clear. It states that an interlocutory order may only be entered '[a]fter the commencement of an action, **and before a judgment therein** . . . " (emphasis in original) and concluded with "[i]n this case, a judgment already has been entered and the parties are divorced. Therefore, based on the plain language of the statute, this Court should deny Valerie's motion . . . ." (J.A. 86.) Despite raising these arguments before the Superior Court, Stephen has not renewed these arguments on appeal.

marriage between the parties."); *Winchester v. Winchester*, 113 A. 584, 584 (Md. 1921) (holding

that the right to an allowance for attorney's fees "rests upon the existence of the marital relation")

(collecting cases).

¶ 19    The powers of the Superior Court in a divorce action are further set forth in section 109,

title 16 of the Virgin Islands Code, titled "Final Orders."  That statute provides, in pertinent part,

that

> Whenever a marriage is declared void or dissolved the court may, without regard
> to any determination that the breakdown of the marriage was the fault of one party
> or the other, further decree:
> . . . .
> (3) for the recovery for a party determined to be in need thereof an amount of money
> in gross or in installments, as may be necessary for the support and maintenance of
> such party[.]

16 V.I.C. § 109(a)(3).  In other words, section 109(a)(3) permits the Superior Court, after granting

a divorce, to mandate that the former spouse with greater means continue to provide monetary

support to the former spouse with lower means—commonly known as alimony—even though the

obligation for the spouses to support each other pursuant to section 342(a)(1) has terminated

because they are no longer husband and wife by virtue of the divorce decree.  And as reflected by

the very title of section 109, an order directing a party to pay alimony after issuance of a divorce

decree is a final order.  *See, e.g., Berrios-Rodriguez v. Berrios*, 58 V.I. 477, 480 (V.I. 2013).

¶ 20    Here, despite labeling it a "Pendente Lite Order," the Superior Court's August 23, 2022

order was not an interlocutory *pendente lite* support order issued pursuant to section 108, but rather

a final order of alimony issued pursuant to section 109.[4]  Section 108, by its own terms, only

---

[4] In fact, in the prior opinion rendered in this very case, this Court cited to section 109(a)(3)—and
not section 108—as the legal basis for the Superior Court to order the support and maintenance of

permits the Superior Court to issue a *pendente lite* support order for the period "[a]fter the commencement of an action, and before a judgment therein." In this case, the record reflects that Stephen commenced the action on November 14, 2016, Valerie filed an answer on February 21, 2017, without requesting either *pendente lite* support or an alimony award, and the Superior Court issued its divorce decree several years later, on February 14, 2022, which noted that neither of the parties requested alimony and that it would only reserve the issue of division of marital assets for resolution at a future date. Consequently, the authority of the Superior Court to issue *pendente lite* support terminated on February 14, 2022, in that it had entered "a judgment" on the divorce petition, from which no appeal was taken within the time allowed. See *Penn v. Mosley*, 67 V.I. 879, 891 n.4 (V.I. 2017) (explaining that a "decree" is a type of "judgment"). And having granted the divorce, section 109(a)(3) constitutes the only statutory authority for the Superior Court to order Stephen to pay money to Valerie for support and maintenance. *See Gov't of the V.I. v. Lorillard*, 358 F.2d 172, 175 (3d Cir. 1966) ("[T]he Virgin Islands statutes do not impose upon the former husband after divorce the duty to support his former wife, except as such support is imposed by the decree of divorce under the authority of 16 V.I.C. §§ 109(3) and 110."). And as noted above, the very title of section 109 reflects that such an order is a "final order," and this Court possesses jurisdiction to hear "appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a).

¶ 21    This interpretation is consistent with the Virgin Islands Rules of Family Division Procedure, which went into effect on June 1, 2019, expressly providing that all provisional

---

an economically vulnerable ex-spouse after the granting a divisible divorce but before the resolution of other issues, such as the division of marital property. *Evans-Freke*, 75 V.I. at 422 n.4.

orders—including *pendente lite* orders and orders awarding interim attorney's fees—automatically terminate when:

      (1) the final decree is entered subject to right of appeal; or
      (2) the petition for dissolution or legal separation is dismissed; or
      (3) the court amends or vacates the order.

V.I. R. FAM. P. 4(g). Since *pendente lite* and interim attorney's fees orders automatically terminate upon entry of a final decree, it necessarily follows that the Superior Court cannot enter a *pendente lite* order or interim attorney's fees order for the first time after it has issued an appealable decree granting the divorce. Consequently, in light of the relevant statutory framework, this Court concludes that it possesses jurisdiction over this appeal.

## B. Standard of Review

¶ 22    The Superior Court's rulings with respect to alimony and attorney's fees and costs are reviewed for abuse of discretion, "unless the Superior Court based its alimony award on a misapplication of the law or a clearly erroneous factual finding." *Berrios-Rodriguez,* 58 V.I. at 480; *In re Guardianship of Smith*, 58 V.I. 446, 449 (V.I. 2013) ("This Court reviews the Superior Court's ruling on a motion for attorney's fees and costs for abuse of discretion."). Given the fact-intensive nature of an alimony determination, we ordinarily afford the Superior Court "a great deal of discretion with respect to its ultimate determination." *Harvey v. Christopher*, 55 V.I. 565, 577 (V.I. 2011). We exercise plenary review of the Superior Court's application of law, *Edward v. GEC, LLC*, 67 V.I. 745, 752 (V.I. 2017) and over questions relating to the Superior Court's subject matter jurisdiction. *Drayton v. Drayton,* 65 V.I. 325, 332 (V.I. 2016).

## C. Authority to Award Alimony and Attorney's Fees

¶ 23    In his appellate brief, Stephen challenges the merits of the Superior Court's August 23, 2022 order on numerous grounds. However, as noted above, the Superior Court lacked the

authority to award *pendente lite* support under section 108, given that it had already entered a judgment in the divorce action which dissolved the parties' marriage and, by extension, terminated Stephen's obligation to support Valerie pursuant to section 342. Rather, the Superior Court's authority to order Stephen to make support and maintenance payments to Valerie, or to fund Valerie's ongoing legal expenses, could only arise under section 109, which permits the Superior Court, after issuing a divorce decree, to further decree "for the recovery for a party determined to be in need thereof an amount of money in gross or in installments, as may be necessary for the support and maintenance of such party." 16 V.I.C. § 109(a)(3).

¶ 24    What complicates the granting of such relief in this case, however, is that Valerie did not assert a claim for *pendente lite* support or alimony in her February 21, 2017 answer, nor did she make such a request at any time in the intervening five years before the Superior Court issued the February 14, 2022 divorce decree. Rather, Valerie sought this relief for the very first time in her March 11, 2022 motion. The question, then, is whether the Superior Court possessed the authority to order Stephen to make support and maintenance payments to Valerie in its August 23, 2022 order, when Valerie requested this relief for the very first time only after the divorce had already been granted with the Superior Court only retaining jurisdiction to distribute the parties' marital assets at a later date.

¶ 25    We conclude that the Superior Court lacked the authority to award alimony at such a late stage in the proceedings. This Court has previously noted that in a cause of action for alimony, the party seeking alimony "bears the burden of proof." *Berrios-Rodriguez*, 58 V.I. at 490. Rule 2 of the Virgin Islands Rules of Family Division Procedure provides that "[t]he general provisions of Virgin Islands Rules of Civil Procedure 8 and 10 as to the requirements for pleading form and content shall apply in all proceedings in the Family Division, unless otherwise ordered in a

particular case by the court." V.I. R. FAM. P. 2(a). Rule 8 of the Virgin Islands Rules of Civil

Procedure, in turn, requires that a claim for relief be made in a pleading. V.I. R. CIV. P. 8(a). In

light of these basic principles, Valerie was required to assert a claim for alimony in her answer or

other pleading and should not have been permitted to make such a claim in a motion filed almost

one month after entry of the divorce decree.[5]

¶ 26    It is, however, worth acknowledging, that title 16, section 110 of the Virgin Islands Code

provides that

> At any time after a judgment is given the court, upon the motion of either party on
> notice, may set aside, alter or modify so much of the judgment as may provide
> alimony or for the appointment of trustees, for the care and custody of the minor
> children, or the nurture and education thereof, or the maintenance of either party in
> the action.

This language could theoretically be interpreted as permitting the Superior Court to modify a

divorce decree to provide for alimony, even if alimony had never been sought. But this

construction of section 110 has been rejected by the only Virgin Islands court to have considered

the question. *See Brandy v. Brandy*, 21 V.I. 267, 269-70 (V.I. Super. Ct. 1985) ("Mrs. Brandy bases

her motion to modify on 16 V.I.C. § 110 (1964), which authorizes this court to modify an existing

award of spousal support. No Virgin Islands decision, though, can be found that holds that section

110 allows the court to order payment of support where, as here, the original divorce decree is

silent on that subject."). While this Court is certainly not bound by this lower court decision, the

overwhelming majority of jurisdictions have construed similar statutes to hold that divorce decrees

---

[5] It is important to emphasize that such a rule would <u>not</u> preclude a court from entering a child
support order simply because the former spouse did not request child support as part of the divorce
proceeding. This is because the Virgin Islands Code mandates that parents support their children,
*see* 16 V.I.C. § 342, and this duty to support is not extinguished simply because the children's
parents obtain a divorce from each other.

may be modified to include alimony or other types of spousal support at a later date only if the decree includes an express provision retaining jurisdiction to permit a future application for spousal support. *See, e.g., Thomasson v. Thomasson*, 302 S.E.2d 63, 65 n.1 (Va. 1983) ("The silence of the final decree as to spousal support has the effect of foreclosing the wife from petitioning the court. . . for a future award in the light of changed circumstances. This result could have been avoided by an express reservation, in the final decree, of the court's power to fix and modify spousal support in the future as changed circumstances might thereafter require.") (internal citations omitted); *In re Marriage of Carlson*, 338 N.W.2d 136, 139 (Iowa 1983) ("[I]f the decree in a divorce action is silent upon the question of alimony, or if the decree provides that no alimony is allowed, the decree can not be thereafter modified so as to allow alimony, although there may be a change in the circumstances of the parties.") (collecting cases) (internal ellipsis omitted); *Van Brocklin v. Van Brocklin*, 635 P.2d 1186, 1189 (Alaska 1981) ("Where there is no award of alimony and no express reservation of jurisdiction to award the same, a trial court generally lacks authority to make such an award at a later date."); *In re Marriage of Park*, 602 P.2d 1123, 1124 (Or. Ct. App. 1979) ("[I]f the original decree provides for no spousal support, no such support can be added to the decree at a later time"); *Gruber v. Gruber*, 523 P.2d 1353, 1357 (N.M. 1974) (same); *Burroughs v. Burroughs*, 316 A.2d 522, 523 (Vt. 1973) (modification of alimony proper only where alimony appears in the original decree); *Taylor v. Taylor*, 128 S.E.2d 910, 912 (S.C. 1962) ("[W]here the divorce decree does not provide for alimony and there is no reservation of jurisdiction in the decree, such is final and absolute, and the wife cannot be allowed alimony in any subsequent proceeding."); *Long v. Long*, 5 P.2d 1047, 1048 (Ariz. 1931) ("Since the original decree contained no provision regarding alimony for plaintiff, the court was without jurisdiction to grant her petition for alimony in the present proceeding."); *Hall v. Hall*, 80 S.E. 992, 992 (Ga. 1914) ("After a wife

has obtained a decree of total divorce the matrimonial relation no longer exists, and therefore she can not then obtain an order or judgment requiring her former husband to pay alimony."); *see also Domestic Divorce Decree Without Adjudication as to Alimony, Rendered on Personal Service or Equivalent, As Precluding Later Alimony Award*, 43 A.L.R.2d 1387, 1391 (1955 & Supp. 1992) (collecting cases).

¶ 27     Similarly, the fact that the Superior Court issued a divorce decree yet expressly retained jurisdiction to distribute the parties' marital assets at a later date should not give the Superior Court *carte blanche* to reopen other issues pertaining to the parties' divorce, such as alimony.  It is certainly true that "an interlocutory order . . . remains open for reconsideration by the trial court." *Greene,* 67 V.I. at 734 (collecting cases).  But as explained earlier, a divorce decree—even one that does not resolve every outstanding issue between the parties—is not an interlocutory order, but a final order, *see* 16 V.I.C. § 109, and thus is not subject to plenary modification, but like other final judgments may only be altered "in certain specifically enumerated circumstances." *In re Welcome*, 58 V.I. at 250 (rejecting the claim that "a divorce court maintains jurisdiction after final adjudication and may modify a divorce decree" because "the Superior Court lacked plenary power . . . after final judgment.").[6]

---

[6] While the Virgin Islands Rules of Family Division Procedure do not include a rule specifically addressing the conditions under which a party may seek to amend or seek relief from a final judgment, Rule 1(i)(1) provides that "[w]here no Rule is included addressing a procedure, provisions of the Virgin Islands Rules of Civil Procedure . . . may be used [and] adapted as necessary" in family law matters.  Accordingly, the provisions of Rules 59 and 60 of the Virgin Islands Rules of Civil Procedure addressing the circumstances under which a final judgment that has been entered may be altered or amended, and the conditions under which relief may be afforded from a final judgment, respectively, apply in family law matters such as the instant case, which involves "matters . . . arising from dissolution of marriage . . . and all proceedings for modification . . . arising from these proceedings."  V.I. R. Fam. P. 1(b).  Case law recognizing the time limits for pursuing relief under either of these rules would likewise apply.  *See, e.g., Dennie v. Olympic Rent-*

¶ 28    One such circumstance, of course, is when the Superior Court expressly retains jurisdiction over an issue, as it did in this case regarding the division of marital assets.  But the fact that a party may have failed to plead a particular claim or regrets a decision made during the divorce proceeding—such as consenting to a provision of the divorce decree that requires support payments greater than those required by law—is not a justifiable reason for modifying the divorce decree.  *See Engeman v. Engeman*, 64 V.I. 669, 678 (V.I. 2016).

¶ 29    In this case, Valerie did not assert a claim for alimony, *pendente lite* support, attorney's fees, or any monetary award at any point between the filing of Stephen's divorce petition on November 14, 2016, and entry of the Superior Court's divorce decree nearly six years later on February 14, 2022, despite having numerous opportunities to do so, including in her February 21, 2017 answer and subsequent amendment to it.  The Superior Court clearly recognized these circumstances, expressly noting in the February 14, 2022 divorce decree that "[t]he parties have neither waived nor asserted their right to alimony."  (J.A. 39.)  And while the February 14, 2022 divorce decree expressly retained jurisdiction to determine an appropriate distribution of the parties' marital assets, it did not retain or reserve jurisdiction to award alimony or any other support payments at some future date.  Consequently, the Superior Court lacked the authority to order Stephen to make any support, maintenance, or attorney's fees payments in its August 23, 2022

---

*A-Car*, 2023 VI 6 ¶18 (V.I. 2023) (explaining that a motion to alter or amend a judgment must be filed "no later than 28 days after the entry of the judgment" as required by Rule 59(e), and that a motion seeking such relief that is filed after this 28-day deadline "could only be considered as a motion seeking relief from a judgment under the provisions of Rule 60(b)," which is subject to the filing deadlines imposed by Rule 60(c)(1)).  Further, in addition to the powers to afford relief conferred on the Superior Court by Rule 60(b), the Superior Court also expressly retains the "power[s] to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; [and] (2) set aside a judgment for fraud on the court."  V.I. R. CIV. P. 60(d).

order.[7]  Therefore, this Court will reverse the portion of the August 23, 2022 order requiring Stephen to pay Valerie $7,500 cash per month, provide her with $5,000 credit card access per month, and to pay a one-time sum of $350,000 for legal expenses.[8]

### III. CONCLUSION

¶ 30   The Superior Court erred when it awarded Valerie alimony *pendente lite* and attorney's fees since these claims were not pled or reserved prior to the Superior Court issuing the divorce decree.  Accordingly, we reverse the Superior Court's August 23, 2022 opinion and order, and on remand, direct that the Superior Court promptly proceed to resolve the last remaining issue before it—the distribution of marital assets.

**Dated this 13th day of October, 2023.**

**BY THE COURT:**

**/s/ Rhys S. Hodge**
**RHYS S. HODGE**
**Chief Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

---

[7] Having concluded that the Superior Court lacked the authority to order Stephen to make any support, maintenance, or attorney's fees payments in its August 23, 2022 order, we need not address the other issues raised, including whether the Superior Court abused its discretion in awarding such payments.

[8] At oral argument, in response to a direct question from the Court, Stephen's counsel affirmed that Stephen fully intends to continue to pay to Valerie, or on her behalf, all of the payments, costs, expenses, and fees that he had been paying prior to the August 23, 2022 order until the distribution of the marital assets is completed and the case terminated.  Given Stephen's past performance without a specific order in this case, we have no reason to doubt that this promise will be adhered to.

**By:**       /s/ Reisha Corneiro
     **Deputy Clerk**

**Dated**:    October 13, 2023